UNITED STATES of America, Appellee,

v.

Gordon R. SWANSON, Appellant.

UNITED STATES of America, Appellee,

v.

Glenn F. GAFFEY, Appellant.

Nos. 74–1395, 74–1396.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1974.

Decided Jan. 23, 1975.

[*] Honorable Gus J. Solomon, Senior United States District Judge, Portland, Oregon, sitting by designation.

T. M. Whicher, Sioux City, Iowa, for appellants.

Robert Sikma, Asst. U. S. Atty., Sioux City, Iowa, for appellee.

Before LAY, ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

In these consolidated criminal appeals we review the convictions of Gordon R. Swanson and Glenn F. Gaffey, who were found guilty by the trial court[1] of willful failure to file income tax returns for 1970 and 1971, in violation of 26 U.S.C. § 7203.[2] Appellants challenge their convictions upon the basis of (1) unconstitutional selective prosecution, (2) denial of access to documents submitted by the government *in camera* and (3) failure of the government to prove willfulness. Upon a careful review of the facts contained in the record and the issues raised on appeal, we affirm both convictions.

## THE FACTS

Swanson and Gaffey are both certified public accountants and partners in the accounting firm of Shipway and Swanson in Sioux City, Iowa.[3] A considerable portion of the firm's business is devoted to tax-related matters. The evidence shows that for several years each de-fendant-appellant failed to file timely his personal tax returns as well as those of the partnership. Throughout these years Swanson and Gaffey sought frequent extensions, and they assessed against themselves and paid to the Internal Revenue Service interest and penalties due as a result of their delinquencies.

The record discloses that for 1970 and 1971, the tax years covered by the indictments, Swanson's and Gaffey's returns were not filed until December 15, 1972, after each defendant had been informed of pending criminal investigations.[4] Each defendant has conceded that he knew that he was required to file timely tax returns for those years but had failed to do so.

At trial each defendant advanced a series of reasons for his failure to file timely returns: Swanson produced evidence that his father, mother and wife were ill during the time period in question and that, in addition to extraordinary business pressures, a third partner, Mel Hagberg, separated from the partnership in 1969. Hagberg's withdrawal from the firm precipitated difficulties in dividing the partnership profits for the preceding years. At the portion of the trial devoted to Gaffey's case, evidence was introduced indicating that the departure of Hagberg as well as certain record-keeping problems caused his tax returns to be filed late. Swanson's reluctance to cooperate in the division of

---

1. The United States District Court for the Northern District of Iowa, Honorable Edward J. McManus, Chief Judge. The cases were transferred from the Southern District of Iowa on defendants' motion. Each defendant entered a plea of not guilty and waived his right to a jury trial.

2. The statute provides:

   Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,-000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

   26 U.S.C. § 7203.

3. Swanson is the senior partner of the firm; Gaffey the junior partner. The partnership formed in 1967 consisted of Swanson, Gaffey and Mel Hagberg.

4. The only major difference between the circumstances surrounding the returns for 1970 and those for 1971 is that for the latter each taxpayer had filed an automatic extension request and paid $1,000 toward his taxes on April 17, 1972, the filing date for 1971 returns. This was the first year that automatic extensions were permitted.

   The partnership returns for 1970 and 1971 were also filed in December, 1972.

the partnership income exacerbated Gaffey's difficulties.

Following the conviction of each defendant by the trial court, these consolidated appeals were filed. We resolve the three issues raised by appellants in favor of the government and affirm both convictions.

## I. SELECTIVE PROSECUTION

Appellants first seek reversal of their convictions on the ground that their constitutional rights were violated by the Internal Revenue Service's selective enforcement of the criminal tax laws. Following their entry of pleas of not guilty to the indictments, the trial court granted defendants' motion to discover certain IRS materials. The IRS produced documents revealing the existence of "Project ACE" which gave "special priorities" to the prosecution of tax crimes by attorneys, certified public accountants and enrolled practitioners as a result of the "special obligation and responsibility [of these professionals] to the tax laws."[5] Pursuant to motions for additional discovery, the trial judge examined in camera Internal Revenue Manual 9180, Intelligence Tolerance and Criteria Handbook, established by Project ACE.

Defendants-appellants contend that Project ACE, which focused on C.P.A.'s and other professionals, represents arbitrary and capricious discrimination that deprives them of their constitutional rights.[6] In support of this theory, appellants have submitted statistical data purporting to demonstrate that Project ACE has resulted in a disproportionate number of criminal tax indictments among attorneys and C.P.A.'s. Such contentions were presented to the District Court in motions to dismiss the indictments, which the District Court deferred until the time of trial and ultimately denied.

■ It is well established that a reasonable prosecutorial discretion is inherent in our judicial system, United States v. Wiley, 503 F.2d 106, 107 (8th Cir. 1974), and that such discretion does not amount to unconstitutional discrimination unless it is deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification, United States v. Alarik, 439 F.2d 1349 (8th Cir. 1971).

■ As the Court of Appeals for the Second Circuit has stated in a recent opinion:

To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as 'intentional and purposeful discrimination.' See Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1943); Moss v. Hornig, 314 F.2d 89, 92–93 (2d Cir. 1963); United States v. Ahmad, 347 F.Supp. 912 (M.D.Pa.1972), aff'd sub nom., United States v. Berrigan, 482 F.2d 171 (3rd Cir. 1973); United States v. Falk, 479 F.2d 616 (7th Cir. 1973) (en banc); United States v. Crowthers, 456

---

**5.** Statement attributed by appellants to Evan Hultman, United States Attorney for the Northern District of Iowa, in affidavit of defense counsel, filed November 26, 1973.

**6.** Because federal governmental action rather than state action is challenged here, appellants' argument must be framed in terms of the Fifth Amendment. While only the Fourteenth Amendment, which is addressed to the states, contains an equal protection clause, the Fifth Amendment, which limits action by the federal government, does contain a due process clause. The Supreme Court has observed that "the concepts of equal protection and due process * * * are not mutually exclusive" and that "discrimination may be so unjustifiable as to be violative of due process." Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954).

F.2d 1074 (4th Cir. 1972); United States v. Steele, 461 F.2d 1148 (9th Cir. 1972), See Comment, 'The Right to Nondiscriminatory Enforcement of State Penal Laws,' 61 Colum.L.Rev. 1103 (1961). Mere 'conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.' Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962).

United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974).

It is clear that appellants have failed to satisfy the second prong of that burden. We uphold the order of the District Court denying defendants' motions to dismiss the indictments as unconstitutionally selective and discriminatory. *Cf.* United States v. Mirabile, 503 F.2d 1065 (8th Cir. 1974).

## II. DISCOVERY

In a related claim defendants-appellants contend that if they were in fact unable to establish a case of unconstitutional prosecutorial discrimination, this failure is attributable to the government's noncompliance with the District Court's discovery orders issued December 21, 1973, pursuant to Fed.R.Crim.P. 16. They further argue that the District Court should have permitted them to examine the documents which were inspected by the court *in camera* as well as additional correspondence and statistical data which they had requested the government to produce.

█ In its order of January 23, 1974, the District Court stated that the government had substantially complied with the court's discovery order and, thus, a continuance requested by the defense would be denied. "The law of this Circuit is well established that '[a]n application for relief under the discovery rules . . . is a matter within the sound discretion of the district court and is reviewable only for an abuse of discretion.' " United States v. Cole, 453 F.2d 902, 904 (8th Cir.), cert. denied, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972), *quoting* Hemphill v. United States, 392

F.2d 45, 48 (8th Cir.), cert. denied, 393 U.S. 877, 89 S.Ct. 176, 21 L.Ed.2d 149 (1968). "[A]n error in administering the discovery rules is not reversible absent a showing that the error was prejudicial to the substantial rights of the defendant." United States v. Cole, *supra*, 453 F.2d at 904; *see* Meyer v. United States, 396 F.2d 279, 283 (8th Cir. 1968), cert. denied sub nom. Dugger v. United States, 393 U.S. 1017, 89 S.Ct 621, 21 L.Ed.2d 561 (1969); Hansen v. United States, 393 F.2d 763, 770 (8th Cir.), cert. denied, 393 U.S. 833, 89 S.Ct. 103, 21 L.Ed.2d 103 (1968).

█ We have examined the evidence which the District Court reviewed *in camera.* We find no abuse of discretion or basis of a claim of prejudice in the refusal of the District Court to permit defense counsel to examine these documents. In general terms they reveal the establishment on February 28, 1973, of "Coordinated Compliance Projects." The national goal was to be "simultaneous indictments or criminal informations against individuals who have willfully failed to file income tax returns." The objective was "to achieve maximum geographic coverage involving all districts."

The Projects were to be conducted in three phases: (1) simultaneous indictments of persons in certain groups throughout the country, (2) measurement of the effect of such indictments by reference to the number of delinquent returns before the indictments and thereafter and (3) civil actions brought against delinquent but unindicted taxpayers. It was provided that the cases selected "should be those with good prosecution potential and with few investigative problems. Income should be primarily from full time practice of, or employment in, the taxpayer's means of livelihood and should be relatively substantial . . . . Necessary third party contacts should be minimal." A manual of procedures (IRM 9180 Intelligence Tolerance and Criteria Handbook) was provided. On August 23, 1973, it was determined that the results to date indicated a degree of flagrancy not so great

as to warrant a national public information effort; therefore, it was determined that the public information was to be developed by districts and regions rather than nationally.

These documents support the government's position that Project ACE was based upon a rational classification and was not to be administered so as to accomplish purposefully some infringement of appellants' constitutional rights. We thus conclude that nothing contained in these documents, which were reviewed by the trier of the fact, was of such peculiar probative force that it was an abuse of discretion to deny the defendants access for use in trial.

## III. WILLFULNESS

In their final assignment of error, appellants state that the evidence adduced at trial was insufficient to support a finding of willfulness, an essential element of the crime for which they were convicted. In criminal appeals challenging the sufficiency of the evidence, we view the facts "in the light most favorable to the verdict of the trier of fact . . . ." United States v. Hutchinson, 488 F.2d 484, 489 (8th Cir. 1973), cert. denied sub nom. Ennis v. United States,

417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974).

As used in the statutes defining tax crimes, "willfulness" connotes "a voluntary, intentional violation of a known legal duty," United States v. Bishop, 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973), requiring "bad faith or evil intent," United States v. Murdock, 290 U.S. 389, 398, 54 S.Ct. 223, 78 L.Ed. 381 (1933), or "evil motive and want of justification in view of all the financial circumstances of the taxpayer," Spies v. United States, 317 U.S. 492, 498, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943). "Willfulness" cannot be equated with mere carelessness or recklessness. United States v. Bengimina, 499 F.2d 117 (8th Cir. 1974). We have examined the record and have considered the mitigating circumstances asserted by each defendant-appellant. Each has conceded on appeal that he was aware of his duty to file timely tax returns. Neither has asserted a good faith belief that his actions were in compliance with the law or that he was acting other than voluntarily. We must conclude that a valid defense to the crimes charged has not been established in either case and that the evidence was sufficient to support the convictions in each case.

Affirmed.[7]

---

7. Notwithstanding our affirmance, we are sufficiently troubled to insert this marginal comment concerning a point which none of the parties have raised as error. Swanson and Gaffey were represented by a single attorney at trial and in this appeal. Such dual representation under the facts of this case, where Gaffey asserted Swanson's negligence in preparing the partnership returns as one of Gaffey's defenses, was fraught with great risk and created a serious possibility of a conflict of interest. The record reveals, however, that the defendants were informed of the potential conflict by the court below and by their attorneys but insisted orally and in writing that the one attorney represent them both, even

after the trial judge had offered to appoint separate counsel. [Tr. 4–8.] Although both cases were tried before one judge, the trials were conducted separately. Nonetheless, assuming arguendo that this potential conflict of interest did in fact constitute a denial of effective assistance of counsel, see Craig v. United States, 217 F.2d 355 (6th Cir. 1954), defendants (both C.P.A.'s) clearly had the requisite education and training to effect a knowing and intelligent waiver of that right. Compare Larry Buffalo Chief v. South Dakota, 425 F.2d 271 (8th Cir. 1970). Indeed, a letter filed prior to trial demonstrates their awareness of the potential conflict.