**Erwin N. FOXMAN and Edith C. Foxman, Plaintiffs-Appellants,**

v.

**John P. RENISON, Defendant-Appellee.**

**No. 637, Docket 79–6165.**

United States Court of Appeals, Second Circuit.

Argued Feb. 13, 1980.

Decided June 16, 1980.

Erwin N. Foxman, pro se.

Jo Ann Horn, Tax Division, U. S. Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Jonathan S. Cohen, Attys., Washington, D. C., of counsel), for defendant-appellee.

Before OAKES and VAN GRAAFEI-LAND, Circuit Judges, and TENNEY, District Judge.*

* Of the United States District Court for the Southern District of New York, sitting by designation.

VAN GRAAFEILAND, Circuit Judge:

The question in this case is whether appellants have a Fifth Amendment cause of action against appellee, a former Internal Revenue Service agent, for alleged misconduct during an IRS audit of appellants. The district court held that they have not. and granted appellee's motion for summary judgment. We affirm.

Appellant Erwin N. Foxman is a dentist who practices in Rochester, New York. Appellant Edith C. Foxman is his wife. In November 1970, the IRS commenced an audit of their 1969 tax return. Appellee John P. Renison, then an IRS agent, conducted the audit. After Renison determined that deficiencies existed for 1969, appellants' 1968 and 1970 returns were also assigned to him for audit. In May 1972, Renison completed his audits for these years and proposed deficiencies totaling $14,273.99 to which appellants agreed. Renison then audited appellants' 1971 return in order to bring it into conformity with the changes in their 1968, 1969, and 1970 returns.

At this point, the Foxmans requested a district conference to contest Renison's 1971 findings. As a result of this conference, appellants agreed to the assessment of an additional tax and negligence penalty for 1971 in the amount of $2,185.01. Although this was $2,388.86 less than the tax and penalty as computed by Renison, the difference was largely accounted for by substantial documentation of expenses that had not been examined by Renison during his audit and by a revision in the allowance for depreciation. Appellants then requested that adjustments similar to those made for 1971 be made in their 1968, 1969, and 1970 returns. After the returns for those years were adjusted, the tax deficiency was finally determined to be $7,897.68, to which was added a negligence penalty of $400.38.

Appellants did not appeal from the final determination of deficiency but instead commenced this action in the United States District Court for the Western District of New York. They sued Renison and the United States, alleging that Renison conducted his audits maliciously with a view to causing them injury and claiming both constitutional and state tort law violations. Judge Harold P. Burke dismissed the case against the United States but held that a claim might be stated against Renison under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The litigation was subsequently reassigned to Judge John T. Curtin who granted appellee's motion for summary judgment. Judge Curtin's opinion addressed only the merits of appellants' constitutional claims, and it is the merits of those claims that are urged on this appeal.

Appellants' first claim is that Renison singled them out for audit and for unfair treatment because of the agent's dislike for dentists, especially those who, like Dr. Foxman, deal extensively with Medicaid patients. Appellants allege that this disparate treatment violated their rights to equal protection of the laws. As the district court held, this claim is without merit. Renison's audit was conducted with the approval of his superior, and it is well settled that the IRS "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Powell*, 379 U.S. 48, 57, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964) (*quoting United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950)); *United States v. Chemical Bank*, 593 F.2d 451, 456 (2nd Cir. 1979). Moreover, as in *Jacobson v. Organized Crime and Racketeering Section*, 544 F.2d 637, 640 (2nd Cir. 1976), *cert. denied*, 430 U.S. 955, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977), the fact that the appellants' taxes were substantially understated gives their claim of selective audit a somewhat hollow sound.

Appellants' second contention is that Renison violated IRS procedures by refusing to consider information offered to him that would have substantiated appellants' claimed deductions. This conduct allegedly violated appellants' due process rights. There is an unresolved factual dispute as to whether this information was ever offered to Renison in intelligible form,

or whether instead the Foxmans provided the necessary documentation in the first instance at the conference stage. It is undisputed, however, that the IRS review procedures were available at all times to appellants, and there is no dispute as to the amount finally determined to be owing. Under the circumstances, no constitutional rights were infringed even if there was a violation of IRS regulations. *United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979).

■ Appellants' next due process claim is that Renison threatened to reopen an earlier fraud investigation if they refused to agree to his proposed deficiencies. Assuming that this threat was made and made in bad faith, the district court nonetheless did not err in finding no constitutional violation. In *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the prosecutor carried out a threat to reindict and convict the defendant under a recidivist statute if he refused to plead guilty to a lesser offense with which he was already charged. The Court held that there was no due process violation, stating that "[d]efendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false-condemnation." *Id.* at 363, 98 S.Ct. at 668. The Court's reasoning is applicable here. Appellants were advised by their accountant that they were entitled to accept Renison's report and forestall a fraud investigation while preserving their rights to challenge the findings at the conference level. They ultimately chose that course of action, and substantially reduced their tax liability. Appellants' claim does not rise to the level of a constitutional violation.

■ The Foxmans' fourth claim is that Renison knowingly violated IRS procedures forbidding successive audits by the same agent. The record shows that Renison was directed by the IRS to audit the Foxmans'

returns for four consecutive years (1968–71). Appellants have cited no authority that would support this as a constitutional claim and the Court has found none. *See United States v. Caceres, supra*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733.

Appellants' final claim is that Renison intentionally destroyed a financing relationship between Dr. Foxman and a Rochester bank under which the bank advanced Foxman a percentage of his accounts receivable from Medicaid patients. Because the County Department of Social Services took several months to pay its Medicaid bills, the factoring arrangement was allegedly a valuable asset to Foxman's practice. Renison made several trips to the bank during his audits to examine documents and speak with bank personnel. The Foxmans contend that Renison's trips were in excess of his legitimate needs and were intentionally designed to harass the bank into cancelling the arrangement. The bank eventually decided to discontinue the financing, and a bank officer testified on deposition that the repeated visits by the IRS were a part of that decision. However, the officer also testified that Medicaid factoring was started by the bank as an experiment and, because only two doctors had participated in the program, bank management decided to terminate it as an unprofitable venture. This testimony is undisputed.[1]

■ A person does not have a property interest that merits due process protection unless he has "a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). There must be "rules or mutually explicit understandings that support his claim of entitlement," although understandings may arise from contracts that are either express or implied. *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). In view of the bank's decision to terminate its Medicaid factoring program as unprofitable, Dr. Foxman had no legitimate claim of entitlement

---

1. The bank officer also testified that judgments against Dr. Foxman were being levied against his account.

to his continued participation in that program of which he was unconstitutionally deprived.

The judgment appealed from is affirmed.