PENN-FIELD INDUSTRIES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10163–79.    Filed July 21, 1980.

*J. Earl Epstein* and *Harvey N. Shapiro,* for the petitioner.
*Stephen E. Sokolic,* for the respondent.

## OPINION

DAWSON, *Judge:* On March 19, 1980, petitioner filed a "Motion For An Order Requiring Respondent To Answer Petitioner's Interrogatories 1–248" under Rule 71, Tax Court Rules of Practice and Procedure. On April 28, 1980, respondent filed a "Motion For Protective Order" under Rule 103, Tax Court Rules of Practice and Procedure. A hearing was held on April 28, 1980, at Philadelphia where both parties made oral arguments, and the petitioner submitted a brief in response to respondent's objections to its interrogatories.

Penn-Field Industries, Inc. (petitioner), is a corporation having its principal office in Perkasie, Pa., at the time it filed its petition in this case. In seeking a redetermination of its income tax deficiencies for the fiscal years ended March 31, 1974, and March 31, 1975, petitioner has alleged that respondent in his approach to and conduct of audits, settlement discussions, and litigation involving the issue of deductibility of reasonable compensation paid to shareholder-employees of closely held corporations has practiced invidious discrimination to the extent that petitioner's rights to equal protection and due process of law have been violated. Petitioner served upon respondent 248

interrogatories, consisting of 69 pages, designed to elicit statistical and other information concerning such allegation.[1] Respondent refused to answer these interrogatories and filed his objections to them. He states that he does not keep statistical information with respect to the audit issues requested by petitioner and to gather such information would require pulling every corporate income tax return filed for the 10-year period from 1968 through 1977. Respondent contends that the analysis and statistical breakdown of sales volume, type of business category, totals of deficiencies, subchapter S elections, retained earnings, et cetera, for millions of corporate income tax returns would be unduly burdensome in time, money, and personnel. He further contends that the information sought is irrelevant and immaterial to the redetermination of the deficiencies in this case because, even if some trends in selectivity were established, such

---

[1]Petitioner's requested statistical information may be summarized as follows:

For the years 1968 through 1972, and 1973 through 1977, (a) how many corporations were examined by IRS agents, (b) of these, how many revenue agents' reports asserted a reasonable compensation issue, and (c) what were the total proposed income tax deficiencies.

This paradigm was varied and repeated for corporations having sales (a) under $500,000, (b) between $500,000 and $1 million, (c) between $1 and $2 million, (d) between $2 and $4 million, (e) between $4 and $6 million, (f) between $6 and $9 million, (g) between $9 and $15 million, (h) between $15 and $25 million, (i) between $25 and $50 million, (j) between $50 and $100 million. For each of these categories, the petitioner requested information on (a) how many corporations were publicly held, how many were closely held, and the total proposed tax deficiency for each, (b) how many corporations elected to be taxed under subch. S, I.R.C. 1954, how many did not so elect, and the total proposed tax deficiency of each, (c) how many officers for whom unreasonable compensation was asserted owned certain listed percentages of stock, and (d) how many corporations had retained earnings of less than $500,000, between $100,000 and $250,000, between $250,000 and $500,000, between $500,000 and $1 million, and over $1 million. Additionally, petitioner requested that the above analysis be done for corporations engaged in (a) manufacturing, (b) wholesale distributing, (c) retail business, (d) providing financial services, (e) providing nonfinancial services, (f) construction and contracting, and (g) transportation.

Petitioner attached to its interrogatories an article from the Feb. 29, 1978, issue of Forbes magazine listing salaries of chief executives of 509 large corporations, and asked if the Internal Revenue Service has ever challenged the reasonableness of the compensation of any of the listed executives.

Petitioner also asked if the Internal Revenue Service has ever challenged the reasonableness of compensation paid to (a) "sports stars," (b) "movie stars," (c) "radio, television, or news-media taxpayers," and (d) taxpayers "in the rock music or recording industry."

Petitioner further requested in how many reasonable compensation cases (a) did the taxpayer offer to compromise by computing a normal dividend yield on invested capital and retained earnings but was rejected by the Internal Revenue Service, (b) did the Internal Revenue Service take the position that all excessive compensation is a nondeductible dividend, and (c) did the corporation have insufficient earnings and profits to cover the amount of the dividend determined.

selectivity does not violate the constitutional protections of due process and equal protection.

An application for relief from discovery is a matter within the sound discretion of the trial court. *United States v. Kahl,* 583 F.2d 1351, 1354 (5th Cir. 1978); *United States v. Swanson,* 509 F.2d 1205, 1209 (8th Cir. 1975). The purpose of discovery in the Tax Court is to ascertain facts which have a direct bearing on the issues before us. *Estate of Woodard v. Commissioner,* 64 T.C. 457, 459 (1975). It is the well-established position of this Court that our responsibility is to apply the law to the facts of the case before us and to determine the correct tax liability of the petitioner. How the Commissioner may have treated other taxpayers generally has been considered irrelevant in reaching our decision. See *Davis v. Commissioner,* 65 T.C. 1014, 1022 (1976), and the cases cited therein; *Teichgraeber v. Commissioner,* 64 T.C. 453 (1975). It is conceivable, however, that there may be situations where a taxpayer should be accorded some relief if he were selected for audit on a constitutionally impermissible criterion, although such situations are extremely rare. *Greenberg's Express, Inc. v. Commissioner,* 62 T.C. 324, 328 (1974).

For the reasons expressed below, we think the petitioner's interrogatories are unduly burdensome and irrelevant to the issues before the Court. We accept respondent's statement that he does not keep detailed statistical information of the kind which petitioner seeks in its interrogatories. In order to comply with these interrogatories, the respondent would literally have to pull, survey, and examine all corporate tax returns filed between 1968 and 1977. The time, money, and personnel required to perform this difficult task would be astronomical and clearly burdensome. A protective order is appropriate in such circumstances. *Estate of Woodard v. Commissioner, supra.*

In our judgment, the petitioner's allegations of constitutional violations are likewise irrelevant to the issues involved in this case. The Fifth Amendment to the Constitution protects against the deprivation of life, liberty, or property without due process of law. The due process clause has also been held to provide protection against Federal discriminatory action "so unjustifiable as to be violative of due process." *Bolling v. Sharpe,* 347 U.S. 497–499 (1954); *In re Ward v. Commissioner,* 608 F.2d 599 (5th Cir. 1980), affg. T.C. Memo. 1979–39. However, the Supreme Court has held that the conscious exercise of some selectivity in

enforcement is not in itself a Federal constitutional violation of due process or equal protection where the selection was not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. *Oyler v. Boles,* 368 U.S. 448 (1962).

Petitioner alleges that respondent in his audits, settlements, and litigation of the issue of reasonable compensation paid to shareholder-employees practiced invidious discrimination against it, in particular, and against small closely held corporations, in general. To prevail on this allegation, the petitioner must meet *both* requirements of a two-pronged standard. It must *first* demonstrate that, while others similarly situated have not generally been selected for audit because of conduct of the type forming the basis of the tax deficiencies against petitioner, it has been singled out for tax audit and deficiency determination, and *second,* that the Commissioner's discriminatory selection of it has been based upon impermissible considerations such as race, religion, or the desire to prevent the exercise of constitutional rights. *United States v. Stout,* 601 F.2d 325 (7th Cir. 1979); *United States v. Kahl,* 583 F.2d 1351 (5th Cir. 1978); *United States v. Scott,* 520 F.2d 697 (9th Cir. 1975); *United States v. Swanson,* 509 F.2d 1205 (8th Cir. 1975); *United States v. Berrios,* 501 F.2d 1207 (2d Cir. 1974); *United States v. Malinowski,* 472 F.2d 850 (3d Cir. 1973).

Petitioner is not entitled to discovery relevant to its selective invidious discrimination allegation prior to the establishment of a colorable claim thereto. *United States v. Kahl,* 583 F.2d 1351, 1354–1355 (5th Cir. 1978); *Teague v. Alexander,* an unreported case (D.D.C. 1978, 41 AFTR 2d 78–1017, 78–1 USTC par. 9363). In order to show a colorable claim entitling petitioner to pursue such discovery, we would require evidence establishing the existence of the two essential elements of the recognized standard. *United States v. Berrios,* 501 F.2d 1207 (2d Cir. 1974).

Even if we assume that the purpose for which petitioner seeks the statistical information satisfies the first prong of the standard, namely, that other corporations, perhaps larger, have not been subject to deficiencies based upon the disallowance of deductions claimed for the reasonable compensation of their executives, we think the information would be for naught because the second prong of the standard has not been met. Petitioner has presented no evidence indicating that its selection

for audit and the subsequent determination of deficiencies were based on any constitutionally impermissible standard. The Internal Revenue Service is under a statutory mandate to investigate whenever it appears a taxpayer may be liable to pay income tax. *United States v. Silkman*, 543 F.2d 1218, 1220 (8th Cir. 1976). The Service, however, clearly lacks the resources to audit and determine deficiencies upon every suspected violation of the tax laws. To ensure general compliance with the tax laws, the Internal Revenue Service must, by necessity, focus its limited resources on rationally classified problem areas. Cf. *Foxman v. Renison*, 625 F.2d 429 (2d Cir. 1980, 46 AFTR 2d 80–5208, 80–2 USTC par. 9512); *United States v. Swanson*, 509 F.2d 1205 (8th Cir. 1975); *Huard-Steinheiser, Inc. v. Henry*, 280 F.2d 79 (6th Cir. 1960). Here we are not persuaded that respondent's audit activities in the area of reasonable compensation violated petitioner's rights to due process and equal protection under the Constitution. It is not the function of this Court to decide whether the Commissioner's selection of a particular class of taxpayers for audit was cost-efficient or wise, but only whether it was based upon a constitutionally impermissible criterion. Petitioner's failure to show that the selectivity was based upon an impermissible ground forecloses the relevance of its interrogatories to the controverted issues. To hold otherwise would be to encourage use of the selective invidious discrimination contention, however baseless, as a means of obtaining discovery to which a party would not be entitled. *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974). Unnecessarily broad discovery in this respect would cause extensive delays and jeopardize the administration, the integrity, and the effectiveness of the internal revenue laws. Cf. *United States v. Salter*, 432 F.2d 697, 701 n.6 (1st Cir. 1970).

Accordingly, petitioner's motion for an order compelling respondent to answer its interrogatories will be denied, and respondent's motion for a protective order will be granted.

*An appropriate order will be entered.*