MICHAEL R. FRESOLI AND ANNE V. FRESOLI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fresoli v. Commissioner
Docket No. 44342-85.
United States Tax Court
T.C. Memo 1988-384; 1988 Tax Ct. Memo LEXIS 413; 55 T.C.M. (CCH) 1624; T.C.M. (RIA) 88384; August 16, 1988. Michael R. Fresoli, pro se. William V. Spatz, for the respondent. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined deficiencies in petitioners' Federal income tax as follows (unless otherwise indicated, all section references hereinafter are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure): Additions to Tax
Year
Deficiency
6653(a)
6621(c)
1975
$  5,641.23
-0-
-0-
1976
$ 72,714.94
$ 3,635.75
*
1977
$ 10,917.92
$   545.90 **
1978
$ 92,310.31
$ 4,615.52 ***
1979
$ 16,410.45
$   820.52 **** *415 Respondent's notice of deficiency made adjustments to petitioners' return for 1980, but determined no deficiency for that year. , Respondent's adjustments to petitioners' 1980 return reduce the amount of petitioners' allowable net operating loss carryback from taxable year 1980 to taxable year 1977. After concessions, the issues remaining to be decided are as follows: (1) whether petitioners are entitled to deduct their cash investment with respect to certain partnerships and ventures for taxable years 1976, 1977, 1978, 1979, and 1980; (2) whether petitioners are entitled to deduct certain commission expenses in taxable years 1975, 1976, 1977, 1978, 1979, and 1980; (3) whether petitioners are entitled to deduct certain transportation and automobile expenses in taxable years 1975, 1976, 1977, 1978, 1979, and 1980; (4) whether petitioners are entitled to deduct a certain rental expense for taxable year 1980; (5) whether petitioners are liable for additions to tax pursuant to section 6653(a) for taxable years 1976, 1977, 1978, and 1979; and (6) whether petitioners are liable for the increased rate of interest pursuant to section 6621(c) for underpayments of tax attributable to certain *416 partnerships and ventures for taxable years 1976, 1977, 1978, and 1979. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Michael R. Fresoli and Anne V. Fresoli are husband and wife who resided in West Palm Beach, Florida, when they filed their petition. Michael R. Fresoli ("petitioner") graduated from Lehigh University with a degree in engineering. During the years 1975 through 1980, petitioner was a broker licensed by the National Association of Securities Dealers and sold a variety of securities, including investments in coal, oil and gas, real estate, and movies. Petitioner invested in several coal promotions known as Hudson Coal Program, Mohawk Coal Program, Potomac Coal Program, Erie Coal Program, and Ontario Coal Program, and claimed deductions with respect to those promotions on schedules C of petitioners' 1977, 1978, and 1979 tax returns (hereinafter collectively the "schedule C ventures"). Petitioner also invested in and was, during the years 1976 through 1979, one of the three managing or co-general partners of Beech Run Ventures, *417 Coronado Ventures, Eagles Nest Ventures, Forest Gap Ventures, Hope Mountain Ventures, and Kimball River Ventures partnerships (hereinafter collectively the "partnerships"). Petitioners claimed deductions for losses with respect to the partnerships on their 1976, 1977, 1978, and 1979 returns. Respondent determined that petitioners were not entitled to any deductions with respect to the Schedule C ventures or the partnerships. On the Schedules C of their returns for taxable years 1975 through 1980, petitioners also claimed deductions for commission expenses relating to petitioner's brokerage business. Additionally, petitioners claimed deductions on those Schedules C for transportation, automobile, and rental expenses. Respondent determined that petitioners were not entitled to deductions for the foregoing expenses because petitioners did not establish that the amounts paid were for ordinary and necessary business expenses or for the purposes designated. OPINION
Cash Investments
Petitioners concede that they are not entitled to any deduction for losses with respect to the Schedule C ventures and partnerships beyond petitioner's cash investments. Petitioners contend that *418 they should be entitled to deduct the amounts of petitioner's cash investments, based upon their allegations that respondent offered cash settlements to other taxpayers and did not make such an offer to petitioners. Petitioners' contention has no merit. It has long been settled that deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). In other words, petitioners bear the burden of proving that they are entitled to any deductions with respect to the losses disallowed by respondent in the notice of deficiency. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Furthermore, the notice of deficiency is presumed correct, and "As a general rule, this Court will not look behind a deficiency notice to examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his determinations." Greenberg's Express Inc. v. Commissioner,62 T.C. 324, 327 (1974). Petitioners offered no evidence at trial in support of their assertion that settlements offered to other taxpayers were different than settlements offered to *419 petitioners. In order to prevail on such an argument petitioners would have to show not only that other similarly-situated taxpayers have been offered more favorable settlements but also that they were subjected to invidious discrimination by respondent. Penn-Field Industries, Inc. v. Commissioner,74 T.C. 720, 723 (1980), and cases cited therein. See als Davis v. Commissioner,65 T.C. 1014, 1022 (1976); Avers v. Commissioner,T.C. Memo. 1988-176. Petitioners have not offered any evidence that respondent discriminated in his selection of the recipients of settlement offers or that respondent made settlement offers based upon either impermissible considerations or an arbitrary classification. We therefore will apply the general rule regarding the notice of deficiency. As petitioners have not offered any evidence to prove their entitlement to any deductions with respect to the schedule C ventures and the partnerships, we sustain respondent's determinations with respect to those deductions. Rule 142(a).
Commission Expenses
Petitioners contend that petitioner paid various commissions or finder's fees to others who assisted *420 petitioner in his business of selling investments during taxable years 1975 through 1980 and that petitioners are entitled to deductions for those payments as ordinary and necessary business expenses under section 162. The parties stipulated into the record copies of checks to substantiate each of the payments in issue. Respondent contends, however, that petitioners should not be allowed to deduct the amounts substantiated by those checks because petitioners have not established by credible evidence that the payments were for ordinary and necessary business expenses. Because petitioners contend that the payments represented by the checks represent compensation for personal services, petitioners must prove, in addition to payment, that the compensation is reasonable and that it is based upon services actually rendered. Section 1.162-7(a), Income Tax Regs. The issue of whether compensation was paid purely for services frequently arises in the context of reasonable compensation cases. See, e.g., Home Interiors and Gifts, Inc. v. Commissioner,73 T.C. 1142, 1155 (1980), and cases cited therein. In the instant case, however, respondent has not suggested that the *421 payments are unreasonable -- he only asserts that the payments were not in fact payments in exchange for services, i.e., that the payments might have been for goods. Petitioner has the burden of proof. Welch v. Helvering, supra; Rule 142(a). Based upon the checks stipulated by the parties, the following is a yearly summary of the checks representing petitioner's claimed commission payments: Commission
Year
Expenses
1975
$  19,092
1976
$  25,000
1977
$  32,611
1978
$ 132,990
1979
$   6,294
1980
$  10,675
Total
$ 226,662
Petitioner testified about his method of computing commissions for those who assisted him in raising money for the promotions he sold. According to petitioner, he would pay each such person a commission equal to a percentage of the amount raised. Thus, for example, petitioner testified that Sanford Bernstein raised $ 820,600 for various promotions and was paid commissions of $ 82,060 by petitioner. The record contains copies of several cancelled checks made by petitioner to Sanford Bernstein in the total amount of $ 83,560. We note that under section 6001 petitioners were required to maintain records *422 sufficient to establish the amount of any deductions claimed by them on their income tax returns. See also section 1.6001-1(a), Income Tax Regs. Petitioner testified that he turned over some of his business records to criminal investigators but offered no explanation of which records were turned over or why they could not be retrieved. He also testified that he did not keep records that would identify or trace the disposition of the money that was raised by this sales assistants. Petitioner's testimony in that regard was as follows: THE COURT: You have no record of that, at all? THE WITNESS: No, I didn't keep it; I had a record, at one time, but I didn't keep it. All I kept was if somebody were to ask me why did I pay so and so $ 6,000, I wrote down because he raised $ 60,000, and I have him a ten percent commission on 60,000. I couldn't tell you if 60,000 went into Eagles Nest or Coronado, or if 10,000 went into Eagles Nest, and another 10,000 went into Coronado. Petitioner is well-educated. It is incredible to us that a person of petitioner's education and experience, who was operating a business that raises money from the public, would not keep sufficient records *423 to identify the purposes for which money was raised and to document the disposition of that money. Most of the checks bear no indication of business purpose on the face of the checks. A few checks contained the notation "For Services Rendered" or "Fees," but not a single check contained a notation that it was being paid as a commission for raising money for a particular promotion. Petitioner did not prepare and file any Forms 1099 for the amounts paid to the various payees shown on the checks. The record contains, however, copies of letters from petitioner dated December 30, 1977, that corroborate petitioner's testimony that services were performed for petitioner by certain payees of the checks in connection with various coal programs. Those letters were to the following persons for the following amounts: to R. Allen Diener of Adventure Enterprises in the total amount of $ 6,524; to Jerome A. Goldberg in the amount of $ 784; and to Harold Berson in the amount of $ 1,680. There are also letters dated December 31, 1978, that corroborate services were rendered by certain of the payees of the checks. Those letters were to the following persons for the following amounts: To Jared *424 Linsly in the amount of $ 3,000; to David Adam in the amount of $ 1,500; and to Wayne Bond in the amount of $ 5,750. We are concerned by petitioner's sloppy record-keeping and failure to locate records to corroborate his testimony. We do not condone his failure to keep and produce records in the instant case. Furthermore, we believe that the instant case might have been settled if petitioner had more fully cooperated with respondent in obtaining verification from the payees that the payments represented by the checks were commissions paid for services rendered. In the final analysis, however, the issue devolves to whether we believe petitioner's testimony. After observing petitioner closely, we believe his testimony that the payments represented by the checks were for services actually rendered. Accordingly, we find that petitioner made the payments represented by the checks in exchange for services rendered to his brokerage business and that such payments were ordinary and necessary. Respondent does not contest the timing of the deductions claimed by petitioner with respect to those payments. We therefore hold that petitioners are entitled to deduct, in the years claimed, *425 the payments represented by the checks stipulated into the record in the total amount of $ 226,662 as ordinary and necessary business expenses under section 162.
Transportation and Automobile Expenses
Petitioners claimed deductions on their Schedules C for transportation expenses (other than depreciation) relating to petitioner's brokerage business. Petitioners have failed to introduce any evidence with regard to the following amounts of those claimed expenses: Year
Claimed Expenses
1975
$ 1,606
1976
1,661
1977
1,392
1978
4,467
1979
2,584
1980
2,802
Therefore, we will treat the foregoing amounts as conceded by petitioners. Rule 142(a). During the taxable years 1977 through 1980, petitioners computed and deducted depreciation on one of two automobiles owned by their family, on the basis that it was used 100% of the time in petitioner's business all year. Petitioner admitted, however, that his Schedule C business was most active during the months September through December, with most sales occurring in December. During the busy season of one of those four years, 1980, petitioner testified that he was in Chicago all but one *426 or two weekends and that he left the automobile at his home in West Palm Beach, Florida. Petitioner also testified that his wife and children used "occasionally" the automobile for personal purposes. Based upon petitioner's testimony, we find that the automobile was not used 100% of the time in business for the entire year in each of the taxable years at issue and that the automobile was used at least part of such time for personal use. When an automobile is used partly for business and partly for personal purposes, it is appropriate to make an allocation of the percentage of business use of the automobile and to allow only that percentage of depreciation as business deduction. Henry Schwartz Corporation v. Commissioner,60 T.C. 728, 744 (1973). See also Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). Petitioner kept no mileage log or other records whatsoever to substantiate his business and personal usage of the automobile. The Court is satisfied, however, that petitioner used the automobile in the his business. Bearing heavily against petitioners, "whose inexactitude is of [their] own making," we find that petitioner used the automobile *427 for business 50 percent of the time during taxable yeears 1977 and through 1979 and 25 percent of the time during taxable year 1980. We find the remainder of petitioner's usage of the automobile to be personal. Cohan v. Commissioner, supra at 544.
Rental Expenses
In his statutory notice of deficiency, respondent disallowed a deduction for "rental expense" in the amount of $ 4,500 claimed on the schedule C for petitioner's brokerage business for taxable year 1980. At trial, petitioners introduced four cancelled checks in the total amount of $ 4,500 payable to Linda Shaw. Petitioner testified that he rented an apartment while he was on a business trip in Chicago during the last four months of 1980. Petitioner also testified that $ 900 of the $ 4,500 paid to Linda Shaw was a refundable security deposit. Based upon the foregoing, we find that $ 3,600 of petitioner's payment was for lodging while away from home and that the balance was a nondeductible deposit. Section 162(a)(2) allows a deduction for lodging while traveling away from home in pursuit of a trade or business. No deduction is allowed, however, unless the taxpayer substantiates the expenditure *428 by "adequate records" or by sufficient evidence corroborating his own statement. Section 274(d). To meet the adequate records requirements of section 274(d), a taxpayer "shall maintain an account, book diary, statement of expense or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure * * *." Section 1.274-5(c)(2)(i), Income Tax Regs. The elements to be proved with respect to each traveling expense are the amount, time, place, and business purpose of the travel. Section 1.274-5(b)(2), Income Tax Regs. The foregoing requirements supersede the doctrine of Cohan v. Commissioner, supra, which formerly allowed a deduction by the approximation of expenses, even though the exact amount had not been proved, if there was reasonable certainty that the expenses had been incurred. Section 1.274-5(a), Income Tax Regs.
The substantiation requirements of section 274(d) are designed to encourage taxpayers to maintain records, as well as documentary evidence substantiating each element of the expense sought to be deducted. Section 1.274-5(c)(1), Income Tax Regs. Furthermore, section 274 contemplates *429 substantiation by more than self-serving testimony. Ashby v. Commissioner,50 T.C. 409 (1968). Since petitioners kept no records, respondent will be sustained with respect to the rental expense issue for taxable year 1980.
Additions to Tax Under Section 6653(a)
Petitioners contend they are not liable for additions to tax on the grounds that petitioner was a victim of fraud by the promoters of the schedule C ventures and that respondent has not proved that petitioner is "guilty of any wrongdoing." Petitioners' contentions are without merit. Additions to tax under section 6653(a) are presumed correct and petitioners have the burden of proving otherwise. Bixby v. Commissioner,58 T.C. 757 (1972). After carefully considering all of the evidence before us, including petitioner's education and experience, we hold that imposition of the additions for negligence under section 6653(a) is proper for taxable years 1976, 1977, 1978, and 1979.
Additional Interest Under Section 6621(c)
Petitioners also bear the burden of proving that the increased rate of interest under section 6621(c) does not apply. Rule 142(a); Welch v. Helvering, supra. *430 Section 6621(c) provides for an interest rate of 120 percent of the adjusted rate established under section 6621(b) where there is a "substantial underpayment" (an underpayment exceeding $ 1,000) in any taxable year attributable to one or more tax-motivated transactions. The increased rate applies to interest accrued after December 31, 1984, even though the transaction was entered into prior to the date of enactment of section 6621(c). Solowiejczyk v. Commissioner,85 T.C. 552 (1985), affd. per curiam without published opinion 795 F.2d 1005 (2d Cir. 1986). We find that petitioners have failed to prove that the schedule C ventures and partnerships were not "tax motivated transactions" as defined by section 6621(c)(3)(A). Thus, to the extent petitioners' underpayment of taxes in any of the years 1976 through 1979 exceeds $ 1,000, we hold that the increased interest rate pursuant to section 6621(c) is appropriate with respect to the deductions determined in the notice of deficiency to be attributable to tax motivated transactions. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
*. 120% of interest due on $ 66,689.69 underpayment. ** 120% of interest due on $ 9,291.42 underpayment. *** 120% of interest due on $ 24,063.81 underpayment. **** 120% of interest due on $ 14,831,97 underpayment. ↩