T.C. Memo. 1997-278


UNITED STATES TAX COURT


WILTON EARL AND DOROTHY M. KEEL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20679-95.                    Filed June 18, 1997.


Wilton Earl Keel and Dorothy M. Keel, pro se.

<u>Diane D. Helfgott</u>, for respondent.


MEMORANDUM OPINION


TANNENWALD, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' Federal income tax in the amount of $10,925.00 for
the taxable year 1992.  The issue for decision is whether
petitioners may exclude from gross income under section

104(a)(2)[1] amounts received from petitioner Dorothy M. Keel's employer upon termination of her employment on the ground that such amounts represented damages received on account of personal injury.

This case was submitted fully stipulated under Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Beltsville, Maryland, at the time they filed their petition.

Background

Petitioner Dorothy M. Keel (Mrs. Keel) was employed by International Business Machines Corporation (IBM) until her termination in 1992. In 1992, IBM terminated thousands of its employees pursuant to a corporate restructuring plan. Mrs. Keel received a lump-sum payment of $40,411.21 from IBM in 1992 (the lump-sum payment) in connection with her termination. The amount of the lump-sum payment was based on length of her service and salary.

On June 15, 1992, Mrs. Keel signed a General Release and Covenant Not to Sue (the release) as a condition for the sums and benefits, including the lump-sum payment, she received pursuant to the terms of the Modified and Extended Individual Transition

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Option Program (ITO-II Program) offered by IBM.  Pertinent

sections of the release read as follows:

> In exchange for the sums and benefits which you will receive pursuant to the terms of the * * * [ITO-II Program], Dorothy M. Keel (hereinafter "you") agrees to release * * * [IBM] from all claims, demands, actions or liabilities you may have against IBM of whatever kind, including but not limited to those which are related to your employment with IBM or the termination of that employment. * * *  You also agree that this release covers, but is not limited to, claims arising from the Age Discrimination in Employment Act of 1967, as amended, Title VII of the Civil Rights Act of 1964, as amended, and any other federal or state law dealing with discrimination in employment on the basis of sex, race, national origin, religion, disability, or age. You also agree that this release includes claims based on theories of contract or tort, whether based on common law or otherwise.  This release does not include your vested rights, if any, in the IBM Retirement Plan, which survive unaffected by this release.

> *     *     *     *     *     *     *

> 3.   This release does not waive any claims that you may have which arise after the date you sign this release.

> *     *     *     *     *     *     *

> 6.   In the event of rehire by IBM or any of its subsidiaries as a regular employee, you understand that IBM reserves the right to require repayment of a prorated portion of the ITO-II Program payment.  The amount of repayment will be based on the number of weeks off the IBM payroll compared with the number of weeks' salary used to calculate your payment.

On April 15, 1993, petitioners filed their 1992 Federal

income tax return.  They included the amount of the lump-sum

payment in the amount reported on Form 1040, line 7 (Wages,

salaries, tips, etc.).

Petitioners thereafter filed an Amended U.S. Individual Income Tax Return for the taxable year 1992 (the amended return), which respondent received on February 23, 1994. On that return, petitioners claimed that the lump-sum payment was nontaxable. Petitioners enclosed with the amended return a copy of the release and an article included in a newsletter entitled the ITO Newsletter, circulated among IBM employees subject to restructuring.

The article reads as follows:[2]

> An update to the Private Letter Ruling with the question "Is the income from the ITO taxable or not?".
> Section 104(a) (2) [sic] of the Internal Revenue Code of 1986 states that , "except as other wise provided, gross income means all income from whatever source derived." Accordingly, the Supreme Court has held that any accession to wealth is presumed to be gross income, unless the taxpayer can demonstrate that it fits into one of the specific exclusions created by other sections of the Code.
> Code Sections 104(a) provides in relevant part that "gross income does not include.....(2) the amount of any damages received (whether by suit or agreement and whether as lump sums or periodic payments) on account of personal injuries or sickness."
> Based on this information and the agreement IBM and ITOers signed the settlement amount should be nontaxable.
> It seems one reader of the ITOers Newsletter submitted his taxes and included Form # 8275. This form is the one to use to request the lump sum payment be declared nontaxable. The reader included the separation release papers from IBM and guess what? He got his money back!
> You might want to file an update to your taxes.

---

[2] The excerpt as reproduced retains the original spelling and punctuation.

Petitioners' claim for refund as set forth in the amended return was allowed on March 22, 1994. Petitioners subsequently received the refund.

Petitioners were notified on or before November 15, 1994, that respondent had determined that the lump-sum payment was taxable income to them for the taxable year 1992. Respondent issued the notice of deficiency for that year on July 21, 1995.

Discussion

Initially, we deal with several arguments advanced by petitioners which are essentially directed to the proposition that respondent should be estopped from requiring them to pay tax on the lump-sum payment. These arguments are as follows: (1) in addition to relying on the information contained in the newsletter article, prior to filing the amended return, Mrs. Keel was advised by IBM's Payroll Department and by an IRS representative that the lump-sum payment was not taxable; (2) the refund was consistent with that advice; (3) petitioners have acted in good faith and respondent should do the same and not seek to negate the refund, which respondent should have reviewed more carefully and not made based on respondent's claim that the lump-sum payment is taxable; and (4) other similarly situated co-workers have not been contacted to return the refunds they obtained and respondent should not be allowed selectively to enforce the tax laws.

Leaving aside any question as to the sufficiency of petitioners' assertion by way of the stipulated, self-serving testimony of Mrs. Keel as to what she was told by an IRS representative, such erroneous advice does not bar the correction by respondent of a mistake of law on the ground of equitable estoppel. Automobile Club of Michigan v. Commissioner, 353 U.S. 180 (1957); Miller v. United States, 949 F.2d 708, 712 (4th Cir. 1991); Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 59-61 (1995), supplemented by 104 T.C. 417 (1995).

Likewise, the granting of a refund does not preclude respondent from issuing a notice of deficiency.[3] Gordon v. United States, 757 F.2d 1157, 1160 (11th Cir. 1985); Beer v. Commissioner, 733 F.2d 435, 437 (6th Cir. 1984), affg. T.C. Memo. 1982-735; Warner v. Commissioner, 526 F.2d 1, 2 (9th Cir. 1975), affg. T.C. Memo. 1974-243. The taxpayers in Gordon v. United States, supra, and in Warner v. Commissioner, supra, made the same argument as petitioners; i.e., that respondent should not be able to make refunds and then demand repayment. To this the Courts of Appeals replied: "Alas, the Commissioner, confronted by millions of returns and an economy which repeatedly must be nourished by quick refunds, must first pay and then look. This necessity cannot serve as the basis of an 'estoppel.'" Gordon v.

---

[3] Respondent also has the option of pursuing recovery of an erroneous refund in a civil action brought within, generally, 2 years of making the refund. Secs. 7405, 6532(b).

United States, supra at 1160 (quoting Warner v. Commissioner, 526 F.2d at 2).

In a similar vein, the fact that respondent may have treated other taxpayers differently has generally been considered irrelevant. Davis v. Commissioner, 65 T.C. 1014, 1022 (1976). Some selectivity in enforcement is not in itself a Federal constitutional violation of due process or of equal protection where the selection is not deliberately based on an unjustifiable standard such as race, religion, or other arbitrary classification. Baltimore Gas & Elec. Co. v. Heintz, 760 F.2d 1408, 1418-1419 (4th Cir. 1985); Penn-Field Indus., Inc. v. Commissioner, 74 T.C. 720, 722-723 (1980) (citing Oyler v. Boles, 368 U.S. 448 (1962)). No evidence of selectivity based on any unjustifiable standard is reflected in the record herein.

We now turn to petitioners' claim that, in any event, the lump-sum payment is excludable from gross income under section 104(a)(2) because Mrs. Keel suffered personal injury in signing the release. As petitioners put it:

> I [Mrs. Keel] filed an amendment tax return to my [her] 1992 Tax. "Code Sections 104(a) provides in relevant part that 'gross income does not include ....(2) the amount of any damages received (whether by suit or agreement and whether as lump sums or periodic payments) on account of personal injuries or sickness'". Based on this information and the agreement I [Mrs. Keel] signed with IBM, the settlement should be nontaxable income.
>
> My [Mrs. Keel's] amendment was based on the "personal injuries" statement. When I [Mrs. Keel] signed that ITO Waiver with IBM, I indeed suffered

"personal injury".  I had worked for the company for almost twenty three years, more than half my life at that time period, and have not rebound[ed] either financially or personally since that time period.

Except as otherwise provided, gross income includes income from all sources.  Sec. 61(a); <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426 (1955).  While section 61(a) is to be broadly construed, statutory exclusions from income are narrowly construed.  <u>Commissioner v. Schleier</u>, 515 U.S. ___, 115 S. Ct. 2159, 2163 (1995); <u>Kovacs v. Commissioner</u>, 100 T.C. 124, 128 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994).

Under section 104(a)(2), gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness".  Section 1.104-1(c), Income Tax Regs., provides:

> (c) Damages received on account of personal injuries or sickness.  * * *  The term "damages received (whether by suit or agreement)" means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Thus, an amount may be excluded from gross income only when it was received both: (1) through prosecution or settlement of an action based upon tort or tort type rights; and (2) on account of personal injuries or sickness.  <u>Commissioner v. Schleier</u>, 515 U.S. at ___, 115 S. Ct. at 2166-2167; <u>Wesson v. United States</u>, 48

F.3d 894, 901-902 (5th Cir. 1995); <u>Bagley v. Commissioner</u>, 105 T.C. 396, 416 (1995), on appeal (8th Cir., March 13, 1996).

Where damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such damages are excludable under section 104(a)(2). <u>United States v. Burke</u>, 504 U.S. 229, 237 (1992); <u>Thompson v. Commissioner</u>, 866 F.2d 709, 711 (4th Cir. 1989), affg. 89 T.C. 632 (1987); <u>Robinson v. Commissioner</u>, 102 T.C. 116, 126 (1994), affd. in part, revd. in part 70 F.3d 34 (5th Cir. 1995). "[T]he critical question is, in lieu of what was the settlement amount paid?" <u>Bagley v. Commissioner</u>, <u>supra</u> at 406.

Determination of the nature of the claim is factual. <u>Bagley v. Commissioner</u>, <u>supra</u>; <u>Stocks v. Commissioner</u>, 98 T.C. 1, 11 (1992). If the settlement agreement lacks express language stating what the settlement amount was paid to settle, then the most important factor is the intent of the payor. <u>Knuckles v. Commissioner</u>, 349 F.2d 610, 612 (10 Cir. 1965), affg. T.C. Memo. 1964-33; <u>Stocks v. Commissioner</u>, <u>supra</u> at 10.

The first requirement is the existence of a claim "based upon tort or tort type rights". <u>Commissioner v. Schleier</u>, <u>supra</u> at ___, 115 S. Ct. at 2166-2167. The claim must be bona fide, but not necessarily valid, i.e., sustainable. <u>Taggi v. United States</u>, 35 F.3d 93, 96 (2d Cir. 1994); <u>Robinson v. Commissioner</u>, 102 T.C. at 126; <u>Stocks v. Commissioner</u>, <u>supra</u> at 10. In this

connection, we note that we have held that claims for potential future personal injuries do not qualify for exclusion under section 104(a). Roosevelt v. Commissioner, 43 T.C. 77 (1964); Starrels v. Commissioner, 35 T.C. 646 (1961), affd. 304 F.2d 574 (9th Cir. 1962). Such holdings imply that there must be an existing claim. Moreover, while it need not have been previously asserted, the absence of any knowledge of the claim on the part of the employer-payor obviously has a negative impact in determining the requisite intent of the payment.

Petitioners have the burden of proving the specific amounts of the payments allocable to claims of tort or tort-type damages for personal injuries. Failure to meet this burden results in the entire amount's being presumed not to be excludable. See Taggi v. United States, supra; Getty v. Commissioner, 91 T.C. 160, 175-176 (1988), affd. as to this issue and revd. on other issues 913 F.2d 1486 (9th Cir. 1990). The record contains no evidence upon which an allocation could be based.

The release in this case is the same as that in Webb v. Commissioner, T.C. Memo. 1996-50, and essentially the same as that in Sodoma v. Commissioner, T.C. Memo. 1996-275, on appeal (5th Cir., Aug. 14, 1996). By its terms, Mrs. Keel released IBM from liability for both contract and tort claims, but not including claims arising after the date of signature. The release makes no allocation of the lump-sum payment. As did the taxpayer in Webb v. Commissioner, supra, petitioners argue that

- 11 -

the release itself was the cause of the injury.  Petitioners have presented no evidence as to any claims Mrs. Keel may have had, whether or not filed with her employer.  While we can surmise that Mrs. Keel suffered from the prospect of being unemployed, in order to decide the issue before us, we must ascertain the intent of her employer in making the lump-sum payment to her.

The amount of the lump-sum payment was calculated on a number of weeks of service and Mrs. Keel's salary.  The release states that if Mrs. Keel were rehired by IBM, she could be required to repay some portion of the lump-sum payment based on the number of weeks off the IBM payroll compared with the number of weeks' salary used to calculate the lump-sum payment.  As in Sodoma v. Commissioner, supra, and Webb v. Commissioner, supra, the lump-sum payment herein appears to have been severance pay rather than a payment for personal injury.  Severance pay, just like the pay it replaces, is taxable income.

Finally, we note that aside from the assertion in their memorandum brief in respect of the claimed personal injuries, see supra pp. 7-8, we are furnished with no clue as to the nature of the claimed injuries.  It goes without saying that an assertion on brief is not evidence.  Moreover, even if we were to treat it as the equivalent of testimony by Mrs. Keel, it would not be sufficient to satisfy petitioners' burden of proof.  See Kurowski v. Commissioner, 917 F.2d 1033, 1036 (7th Cir. 1990), affg. T.C. Memo. 1989-149 (where the Court of Appeals specifically found

similar after-the-fact testimony insufficient to sustain excludability under section 104(a)(2)).

We hold that the lump-sum payment is not excludable from gross income under section 104(a)(2). Accordingly,

<u>Decision will be entered for respondent</u>.