STEVEN LEWIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lewis v. Commissioner
Docket No. 3302-76
United States Tax Court
T.C. Memo 1983-741; 1983 Tax Ct. Memo LEXIS 51; 47 T.C.M. (CCH) 605; T.C.M. (RIA) 83741; December 12, 1983. *51 During 1971, petitioner was engaged in the business of marketing vacuum cleaner bags and accessories. Petitioner claimed various business expenses deductions under sec. 162, I.R.C. 1954. Petitioner also claimed various itemized deductions. Held: (1) Amounts of allowable advertising expenses, commission expenses, and auto expenses for local transportation are determined. Sec. 162, I.R.C. 1954. (2) Petitioner is not entitled to deductions for travel and entertainment expenses because he has not satisfied the requirements of sec. 274, I.R.C. 1954. (3) Amounts of allowable itemized deductions are determined; the standard deduction is allowed. Sec. 141, I.R.C. 1954. (4) Petitioner is liable for an addition to tax under sec. 6653(a), I.R.C. 1954. Alex. E. Weinberg and Neil E. Ellenoff, for the petitioner. Richard S. Kestenbaum and Adeline P. Malone, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACTS AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax and an addition to tax under section 6653(a)[1] (negligence, etc.) against petitioner for 1971 in the amounts of $28,496 and $1,425, respectively. After concessions, the issues for decision *52 are as follows: (1) Whether, and to what extent, petitioner is entitled to deductions for commissions, entertainment, auto, travel, and advertising expenses under section 162; (2) Whether, and to what extent, petitioner is entitled to various itemized deductions; and (3) Whether petitioner is liable for an addition to tax under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition in the instant case was filed, petitioner resided in Pompano Beach, Florida. During 1970 petitioner resided in Granada Hills, California, in the greater Los Angeles area, in a single family dwelling which he had purchased in 1969. The purchase was financed, in part, by a 30-year mortgage. During 1971, petitioner paid $200 in interest on this home mortgage. On February 9, 1971, there was an earthquake in California in the greater Los Angeles area. The earthquake severely damaged petitioner's home. Petitioner disposed of his home by filing *53 a quitclaim deed with the mortgagee, a savings and loan association. During the latter part of 1970, petitioner became interested in a line of vacuum cleaner accessories manufactured by Home Care products, Inc. (hereinafter sometimes referred to as "Home"). Petitioner contacted Martin Bosses (hereinafter sometimes referred to as "Bosses"), the owner of Home, and asked Bosses to send a small quantity of samples to petitioner in California. The samples were sent to petitioner after he sent Bosses a personal check for them. Petitioner did not sell any products purchased from Home in California. During March 1971, petitioner relocated in New York, New York. For about one month petitioner lived as a house guest of a friend in Brooklyn. Petitioner then moved into an apartment in Manhattan, where he lived until 1973. After moving to New York City, petitioner engaged in the business of marketing vacuum cleaner bags and accessories. He remained in this business, which he conducted under the name "Home Care Products Distributors" (hereinafter sometimes referred to as "Distributors"), through the end of 1971. The business of Distributors was conducted by petitioner personally, not in *54 corporate form. Initially, petitioner used office space of Crusader International (hereinafter sometimes referred to as "Crusader") to conduct the Distributors business. Crusader was a separate company whose business consisted of selling a wide range of products to dealers. Petitioner engaged some of Crusader's salesmen in conducting the Distributors business. Petitioner also used his apartment to operate Distributors. While operating Distributors from the apartment, petitioner used a mailing drop at 2 Penn Plaza, in Manhattan. During the summer of 1971 petitioner opened a suite of offices at 386 Park Avenue South, in Manhattan, from which Distributors was operated. Petitioner had a falling out with Crusader's owner and had stopped using Crusader's office space by the time he opened the offices on Park Avenue South. Petitioner continued to use his apartment for Distributors business, including late night and weekend sales meetings and telephone calls to wholesalers in California and other distant places. Petitioner retained the firm of Ellenoff, Koizim and Goldin (hereinafter sometimes referred to as "EKG") as accountants in 1971. EKG performed general accounting work for *55 Distributors and prepared petitioner's tax forms. Frank Anderson (hereinafter sometimes referred to as "Anderson") was employed by petitioner in connection with Distributors during 1971. Anderson performed general office duties, made sure that bills were paid and that merchandise came in and was shipped out, spoke to customers and sales representatives, and kept the books and records of Distributors. Bertram Goldin (hereinafter sometimes referred to as "Goldin"), a certified public accountant who was a partner in EKG, personally worked on the Distributors account during 1971. Goldin taught Anderson to keep the books of account and business records of Distributors. Goldin met with petitioner or Anderson several times during 1971 in connection with Distributors' accounting records. Goldin prepared petitioner's 1971 income tax return. During 1971, a checking account was maintained by Distributors at the National Bank of North America, in Manhattan. Petitioner's personal duties and activities in Distributors' business included sales management, writing newspaper advertisements, interviewing and hiring salesmen, and engaging in a certain amount of selling. Petitioner travelled in *56 the United States to assist in marketing Distributors' wares, to help close important sales, and to conduct sales clinics. During 1971 petitioner leased a car. Petitioner used the car for business trips that were within relatively short distances of New York City, including trips to Distributors' main supplier in Long Island, New York, and to various Distributors customers. The car was also used for personal trips. Petitioner paid expenses related to the car during 1971, including leasing expenses, insurance, gasoline, and parking, totalling $2,530.19. Of this amount, not less than $50 was spent on State and local gasoline taxes that are not deductible as business expenses, and not less than $250 was spent for business purposes not subject to the requirements of section 274(d). Petitioner engaged Anderson and several independent sales representatives to sell vacuum cleaner bags and accessories to retail stores and to service those accounts for Distributors. Petitioner did not have written commission agreements with these sales representatives. Petitioners paid at least $25,000 in 1971 to these sales representatives as commissions and reimbursement of expenses, relating to their *57 services for Distributors. Distributors placed two types of advertisements in newspapers and other journals in 1971--classified and display advertising. Most of the advertising was classified. On occasion display advertisements were run to attract the attention of people who wished to engage in the vacuum cleaner accessories business. Distributors' advertising was placed in various newspapers in cities with a minimum population of 100,000 to 150,000 people. Petitioner maintained a checking account under the name of Harnell Advertising Agency (hereinafter sometimes referred to as "Harnell"). Harnell was not a separate business, but was merely a checking account of petitioner. During 1971, petitioner wrote a number of checks on the Distributors account which were made out to Harnell. Petitioner paid $800 for advertising expenses during 1971. During 1971, petitioner paid medical expenses of not less than $80 to doctors. He also incurred some expenses for medicines and drugs. Petitioner lived in New York City from March 1971 until 1973, when he moved to Savannah, Georgia. During the summer of 1975, he moved from Savannah to Pompano BeachFlorida. During one of the moves, the *58 original bank statements and cancelled checks for Distributors were lost. Petitioner subsequently obtained copies of most of Distributors' checks and bank statements for 1971 from the National Bank of North America. On the Schedule C of petitioner's 1971 Federal income tax return, he showed $96,055.57 in gross receipts, $82,055.81 in business expenses, and $13,999.76 in net profit from Distributors. In the notice of deficiency, respondent disallowed the entire amounts claimed by petitioner as deductions in the categories shown in table 1. Table 1 Commissions
$27,711
Entertainment
2,590
Auto
2,805
Travel
2,051
Advertising
14,236
Bad debt
[2] 2,006
Net operating loss
[2] 2,512
carryforward
$53,911
On the Schedule A of petitioner's 1971 tax return, petitioner claimed itemized deductions in the amounts set forth in table 2, all of which were disallowed by respondent for lack of substantiation. Table 2 Medical expenses
$ 938.53
Real estate taxes
400.00
State and local
85.00
gasoline taxes
General sales taxes
[3] *59 350.00
Charitable contributions
[4] 150.00
Interest expenses
650.00
$2,573.53 Instead, respondent allowed the standard deduction of $1,500.
For 1971, petitioner was a cash basis taxpayer. OPINION As a preliminary matter, we discuss a memorandum that respondent attempted to introduce into evidence. During negotiations between counsel for the parties, petitioner's counsel prepared a written response to several questions posed by respondent (hereinafter sometimes referred to as "the memorandum"). At trial, respondent offered the memorandum into evidence solely for the purpose of impeaching petitioner's testimony. Petitioner objected on the ground that the document was furnished during settlement negotiations and, thus, should be excluded from evidence pursuant to rule 408 [5] *60 of the Federal Rules of Evidence (hereinafter sometimes referred to as "Fed. R. Evid."). After hearing arguments by counsel, we sustained petitioner's objections.See S. Saltzburg & K. Redden, Federal Rules of Evidence Manual, 189-191 (3d ed. 1982). On brief, respondent renews his contention that the memorandum should be admitted into evidence to impeach petitioner's testimony. The memorandum deals, in relevant part, with petitioner's relationship with Crusader.Respondent maintains that there are two inconsistencies between the memorandum and petitioner's testimony. The memorandum states that Crusader lent funds to Distributors and that the relationship *61 between Crusader and Distributors lasted about six months. On the other hand, respondent states, at trial petitioner testified that he never borrowed money from Crusader and that he worked out of Crusader's offices for a few weeks or possibly a month. Even if we took the memorandum into account, it would not affect the conclusions we have reached in this case. Without giving weight to the memorandum, we have not allowed petitioner a deduction of $3,029.78 for advertising expenses purportedly paid by him to Crusader. The existence of any loans between Crusader and petitioner, and petitioner's relationship to Crusader, is not otherwise directly at issue in this case. In addition, the memorandum would have little, if any, bearing on petitioner's credibility. Contrary to respondent's arguments, the memorandum contradicts petitioner's testimony only with respect to the loans. Petitioner did not testify as to the length of his "relationship" to Crusader, but only with respect to the time he physically worked out of Crusader's offices, as opposed to his apartment and his office at 386 Park Avenue South. Because petitioner's testimony generally suffered from vagueness and inconsistency, *62 one more small inconsistency which, in retrospect, is irrelevant would not reduce his credibility. Thus, even if the memorandum were to be admitted into evidence, we would accord no weight to it in reaching our conclusions in the instant case. Consequently, the question of the memorandum's admissibility is now moot. See Estate of Temple v. Commissioner,67 T.C. 143, 160 (1976). I. Business Expenses
Petitioner contends that he is entitled to deduct the full amounts claimed as to all the disputed items set forth in table 1, supra, as expenses of Distributors. Respondent admits that petitioners conducted the Distributors business during 1971, but contends that petitioner has failed to substantiate the disputed items and so is not entitled to any deductions at all for these items. We largely agree with petitioner as to commissions; we largely agree with respondent as to auto and advertising; we agree with respondent as to travel and entertainment. Deductions are allowed under section 162[6] for the taxpayer's ordinary and necessary trade or business expenses. However, petitioner bears the burden of overcoming the presumption of correctness which attaches to respondent's factual determinations *63 in the notice of deficiency. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
a. Commissions
In support of his claimed deduction for commission expenses, petitioner testified himself and introduced cancelled checks and contemporaneous accounting records prepared by Goldin. On brief respondent states "that petitioner's admittedly incomplete supply of copies of checks purporting to represent commission expenses incurred during the operation of the business in 1971 is insufficient to substantiate the claimed expense of $27,711.27. Therefore, the entire deduction for commissions should be disallowed." We do not view the situation in the same light as respondent does. We accept petitioner's position that he did not generate more than $96,000 of sales as a "one-man band", but that he had sales assistance and that he paid for this assistance. Although petitioner's evidence *64 could have been stronger, our assessment of the credibility of the evidence presented leads us to conclude (and we have so found) that petitioner incurred at least $25,000 in deductible commission expenses. b. Advertising
Most of the evidence submitted with respect to the advertising expenses consists of checks written by Distributors to Harnell. Petitioner testified that Harnell was established as an in-house advertising agency, in order to enable him to secure the 15-percent discount that newspapers and others gave to advertising agencies.He testified that some of the time the discount came in the form of checks from the newspapers, etc., to Harnell or Distributors. Goldin testified that the Harnell account was in effect a "clearing account" for petitioner's advertising expenses, and that is preparing petitioner's 1971 income tax return he treated all of Distributors' checks to Harnell as advertising expenses deductible in full. Neither petitioner nor Goldin was able to explain why Distributors wrote some checks directly to the newspapers, etc. (rather than to Harnell), or where on petitioner's tax return or his books and records the discount checks receipts were accounted for. *65 Anderson, too, testified as to the Harnell account. He attempted to support the view that everything that went into the Harnell account was used for Distributors' advertising expenses. When he was confronted with the fact that the Distributors checks to Harnell were first endorsed by Harnell and then by himself, Anderson's answers were evasive. Goldin testified that he did not inspect the cancelled checks or bank statements of the Harnell account when he prepared petitioner's 1971 return. Goldin acknowledged that he treated all the Distributors checks to Harnell in 1971 as advertising expenses in 1971 (petitioner was a cash basis taxpayer), even though he had no knowledge of what happened to the funds after they were deposited in the Harnell account. Petitioner testified that the Harnell account was maintained at Manufacturers Hanover Trust. Goldin testified that EKG sought bank records at Chemical Bank and National Bank of North America, but not at any other bank. No records of the Harnell account were presented to the Court in the instant case, nor did petitioner explain why no enquiry was made about the account to the bank at which the account was maintained. Harnell was *66 essentially another banking account for petitioner. When a check was written from the Distributors account to the Harnell account, essentially what happened was that petitioner transferred money from one of his pockets to another of his pockets. We know that the Distributors checks written to Harnell were endorsed by Anderson personally. We do not know whether Anderson received the money. We do not know whether the money went into the Harnell account. We do not know whether any money went out of the Harnell account and, if it did, how much went out, when it went out, to whom it went out, and for what purpose it went out. Petitioner has failed to persuade us that any part of the amounts on the Distributors checks to Harnell was used by him for business advertising. Petitioner has not offered any explanation of two entries in his accounting records showing a $3,029.78 advertising expense paid directly by petitioner to Crusader, and a $125 advertising expense paid directly by petitioner. With respect to these items, petitioner has not met his burden of proof. On the other hand, petitioner's records do establish that some advertising expenses were paid directly from the Distributors *67 account. Based on our analysis of these records, we conclude (and we have so found) that petitioner paid advertising expenses of $800 during 1971. Cohan v. Commission,39 F.2d 540 (CA2 1930). c. Travel and Entertainment
Deductions are allowable under section 162 for the taxpayer's ordinary and necessary expenses in carrying on a trade or business. However, section 274[7] *68 provides that no deduction is allowable for travel or entertainment expenses, unless the taxpayer substantiates certain matters by adequate records or by sufficient evidence corroborating his own statement. Under section 1.274-5(c)(2)(i), Income Tax Regs., in order to meet the "adequate records" requirement, a taxpayer is to maintain an account book, diary, statement of expenses, or similar record and documentary *69 evidence (such as receipts, paid bills, or similar evidence) which, when combined, establish each element of the expense that section 274(d) requires to be established. If the taxpayer lacks adequate records, then a written or oral statement by the taxpayer containing sufficient information in detail as to each element set forth in section 274(d) and sufficient other corroborative evidence is required. Section 1.274-5(c)(3), Income Tax Regs.
Petitioner testified that he incurred travel and entertainment expenditures during 1971 in connection with Distributors. He also presented cancelled checks primarily paid to airlines and credit card companies. However, petitioner has not established as to any item of travel, the amount, time, place, or business purpose of the travel. Also, petitioner has not established as to any item of expenses for entertainment, the amount, time, place, or business purpose of the entertainment, or the business relationship to petitioner of the people that were entertained. The broad-brush description in petitioner's testimony does not satisfy the section 274(d) substantiation requirements as to each item of expense for travel and entertainment. Petitioner *70 produced no "adequate records" or other evidence to sufficiently corroborate his testimony. See Andress v. Commissioner,51 T.C. 863, 868-869 (1969), affd. 423 F.2d 679 (CA5 1970). But for section 274, we might allow a deduction in some amount for petitioner's expenses for travel and entertainment, relying on Cohan v. Commissioner,supra. However, the Congress enacted section 274 in part with the specific intent of overruling the so-called "Cohan rule" as to such expenses. Sanford v. Commissioner,50 T.C. 823, 827-828 (1968), affd. 412 F.2d 201 (CA2 1969). Petitioner argues, on reply brief, that the special rule of section 1.274-5(c)(5), Income Tax Regs., should apply. Under this regulation, if the taxpayer establishes that the failure to produce adequate records is because of the loss of such records through circumstances beyond the taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty, then the taxpayer may substantiate a deduction by reasonable reconstruction of his expenditures. In the instant case, petitioner has not established that he lost his records through circumstances beyond his control. He testified only that he lost them while moving, *71 apparently as a result of his own inadvertence. At some point in 1975, Goldin told respondent that petitioner's checkbooks were available for inspection. Petitioner stated that at various times he sent to EKG records in connection with an audit of his 1970 income tax return, but he did not know what records had been sent. Petitioner has not persuaded us that records such as a contemporaneous diary ever existed. Petitioner has not persuaded us that the records that did exist would have provided the information required under section 274(d). Petitioner is not helped by section 1.274-5(c)(5), Income Tax Regs. See Gizzi v. Commissioner,65 T.C. 342 (1975). See also MacGuire v. Commissioner,450 F.2d 1239, 1244-1245 (CA5 1971), affg. a Memorandum Opinion of this Court. [8]
Petitioner also argues on reply brief that because section 1.274-5(c)(2)(iii), Income Tax Regs., requires documentary evidence, such as receipts, only for certain expenditures of $25 or more, and because most of his expenditures for travel and entertainment were less than $25, they need not be substantiated in accordance with the rigorous requirements of section 274.Petitioner's reliance on section 1.274-5(c)(2)(iii), Income Tax Regs., *72 is misplaced. The documentary evidence requirement is in addition to the requirement that petitioner maintain an account book or similar record that reflects the elements of each expense as set forth in section 274(d). Section 1.274-5(c)(2)(i), Income Tax Regs. Thus, although petitioner need not provide documentary evidence of certain expenses of less than $25, he must still provide proof as to each element of section 274(d) which, as discussed above, he has not done.
We conclude that petitioner is not entitled to deductions for travel or entertainment expenses. d.Auto
The substantiation requirements of section 274 are not required to be satisfied for mileage for local transportation. Gestrich v. Commissioner,74 T.C. 525, 530-531 (1980), affd. without published opinion 681 F.2d 805 (CA3 1982). Under the Cohan rule, this Court may approximate the amount incurred for local transportation, if it is convinced an amount was actually spent. Based on petitioner's testimony, it appears that some portion of the claimed automobile expenses were for travel away from home. This portion of the automobile expenses is subject to the substantiation requirements of section 274(d). Petitioner *73 has not established the time, place, and business purpose of this travel. Further, petitioner has testified that a portion of the automobile expense claimed on his 1971 tax return was for his personal use. Deductions are not allowable for these portions of his automobile expenses. On the other hand, we are convinced that petitioner did incur some deductible local transportation expenses during 1971. However, petitioner's evidence as to amount is almost nonexistent. "[B]earing heavily * * * upon the taxpayer whose inexactitude is of his own making" ( Cohan v. Commissioner,39 F.2d at 544), we conclude (and we have found) that petitioner paid $250 in 1971 for business transportation that is not subject to the substantiation requirements of section 274(d). We hold that petitioner is entitled to deduct $25,000 for commissions, $800 for advertising, and $250 for transportation; in all other respects we hold for respondent as to the disputed business expense items. II. Itemized Deductions
Petitioner asserts that he has substantiated all the disputed items set forth in table 2, supra, while respondent maintains that petitioner has not substantiated any part of these items. Respondent *74 allows petitioner the standard deduction ($1,500) in lieu of the itemized deductions. Section 141. We agree with respondent's conclusion that petitioner is to be allowed only the standard deduction. With respect to medical expenses, deductible under section 213(a)[9] *75 , petitioner has shown that he paid some amounts during 1971. However, he has failed to carry his burden of persuading us that his medical expenses exceeded three percent of his adjusted gross income for 1971, as required by section 213(a)(1). On his tax return for 1971, petitioner did not claim any deduction for medical care insurance, and he did not present evidence on this point. We conclude that petitioner is not entitled to any deduction for medical expenses. With respect to real estate taxes, respondent concedes that petitioner owned a home at the beginning of 1971. Presumably, real estate taxes were paid on this home. A real estate tax is deductible by a cash basis taxpayer when the tax is paid. A mortgagor's payment to a mortgagee (or to an escrow account) is not payment; the payment occurs when the mortgagee (or escrowee) transmits the funds to the taxing entity. Hradesky v. Commissioner,65 T.C. 87 (1975), affd. 540 F.2d 821 (CA5 1976). Petitioner does not claim that his mortgagee paid any real estate tax in 1971, he has not shown that he paid any real estate tax directly in 1971, and he does not assert that he is entitled to a deduction because of section 164(d).Further, petitioner has failed to place *76 in the record any evidence from which we could conclude that any prepayment of taxes he may have made to his mortgagee represented actually assessed rather than estimated taxes. Hradesky v. Commissioner, 540 F.2d at 824. We conclude that petitioner is not entitled to any deduction for real estate taxes. Petitioner has presented some evidence as to his use of an automobile. As indicated, supra, we are not impressed by his evidence as to business use of the automobile. However, State and local gasoline taxes are deductible (before 1979) "below the line" to the extent that they are not deductible as business expenses. Doing the best we can with this inadequate record, we conclude that petitioner is entitled to deduct $50 as State and local gasoline taxes. Cohan v. Commissioner,supra.
With respect to interest, we conclude that petitioner did pay some interest expense with respect to his home mortgage. Doing the best we can with this inadequate record, we conclude that petitioner is entitled to deduct $200 as interest on his home mortgage. Cohan v. Commissioner,supra.Petitioner failed to establish that he paid any interest on installment sales or in connection with last payments *77 of any other obligations. Taking into account the foregoing conclusions and the parties' stipulations (notes 3 and 4, supra) as to itemized deductions, it is evident that petitioner's itemized deductions total less than the standard deduction of $1,500 which was allowed by respondent in the notice of deficiency. We hold for respondent on this issue. III. Addition to Tax--Section 6653(a)
Respondent contends that petitioner is liable for an addition to tax under section 6653(a)[10] *78 because he disregarded the minimum recordkeeping requirements demanded of every taxpayer. Petitioner argues that he maintained proper books and records for Distributors. We agree with respondent. An addition to tax under section 6653(a) is imposed if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations. Petitioner has the burden of proving that his underpayments of tax were not due to negligence or intentional disregard of rules and regulations. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Under section 6001[11] *79 and section 1.6001-1(a) and (e), Income Tax Regs., a taxpayer must keep such permanent books of account or records as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown on his tax return. At trial, petitioner testified that he had maintained complete books and records for 1971, including a contemporaneous diary of his travel and entertainment expenses, but that he lost these during either 1973 or 1975 when he moved. Petitioner offered no explanation, other than his own negligence in caring for them, for the loss of his records. Petitioner did produce some records and cancelled checks, but he failed to provide any *80 records of the expenditures made by the Harnell account. Indeed, Goldin's and Anderson's testimony about the Harnell account leads us to conclude that there may never have been business books and records for this account.There is no evidence other than petitioner's testimony, and there is no persuasive evidence at all, to show that his diary satisfied the requirements of section 274(d). Finally, petitioner testified that he deducted all of his automobile expenses even though part of the expenses were for his personal use of the auto. Under these circumstances, we sustain respondent's imposition of the addition to tax under section 6653(a). We hold for respondent on this issue. To reflect the foregoing, [12]
Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
2. At trial, petitioner conceded the bad debt and net operating loss disallowances.↩
3. The parties agree that petitioner is allowed to deduct not less than the amount determined by use of respondent's optional State tax tables for 1971. 4. Petitioner concedes the charitable contributions disallowance.↩
5. Rule 408
COMPROMISE AND OFFERS TO COMPROMISE Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.
6. Section 162 provides, in relevant part, as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *.↩
7. Section 274 provides, in relevant part, as follows: SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES. * * * (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. * * * (h) Regulatory Authority.--The Secretary or his delegate shall prescribe such regulations as he may deem necessary to carry out the purposes of this section, * * *. [The subsequent amendments of this provision by sections 602(a) and 1906(b)(13) [sic] (A) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1572, 1834, do not affect the instant case.]↩
8. T.C. Memo. 1970-89↩.
9. Section 213(a) provides, in relevant part, as follows: SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES. (a) Allowance of Deduction.--There shall be allowed as a deduction the following amounts, not compensated for by insurance or otherwise-- (1) the amount by which the amount of the expenses paid during the taxable year (reduced by any amount deductible under paragraph (2)) for medical care of the taxpayer, his spouse, and dependents (as defined in section 152) exceeds 3 percent of the adjusted gross income, and (2) an amount (not in excess of $150) equal to one-half of the expenses paid during the taxable year for insurance which constitutes medical care for the taxpayer, his spouse, and dependents. [The subsequent amendment of this provision by section 202(a) of tax Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 421, does not affect the instant case.]↩
10. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes --If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. [The subsequent amendments of this provision (by sec. 101(f)(8) of the Crude Oil Windfall Profit Tax Act of 1980, Pub. L. 96-223, 94 Stat. 229, 253, and by sec. 722(b)(1) of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, 342) do not affect the instant case.]
11. SEC. 6001. NOTICE OR REGULATIONS REQUIRING RECORDS, STATEMENTS, AND SPECIAL RETURNS. Every person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and company with such rules and regulations as the Secretary or his delegate may from time to time prescribe. Whenever in the judgment of the Secretary or his delegate it is necessary, he may require any person, by notice served upon such person or by regulations, to make such returns, render such statements, or keep such records, as the Secretary or his delegate deems sufficient to show whether or not such person is liable for tax under this title. [The subsequent amendments of this provision (by section 1906(b)(13) [sic] (A) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1834, section 501(a) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2878, and section 314(d) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 605) do not affect the instant case.]↩
12. At trial, respondent agreed that, if petitioner is eligible to use income averaging, then this method would be used in the Rule 155 computation. Respondent also agreed to obtain and preserve whatever records are in respondent's possession that would show petitioner's taxable income during the appropriate base period.↩