T.C. Memo. 2019-100

UNITED STATES TAX COURT

TODD MYRON MOORE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29854-15.                          Filed August 15, 2019.

Todd Myron Moore, pro se.

<u>Jason P. Oppenheim</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined an income tax deficiency of

$453,564, an addition to tax under section 6651(a)(1) of $23,354.25, and an

[*2] accuracy-related penalty under section 6662(a) of $90,712.80 with respect to petitioner's Federal income tax for tax year 2013.[1]

After concessions, the remaining issues are: (1) whether petitioner is entitled to deduct interest on purported loans paid to alleged creditors; (2) whether petitioner is entitled to deduct commission expenses reported on his return for his tax return preparation business; and (3) whether petitioner is liable for the accuracy-related penalty under section 6662(a). Petitioner resided in Georgia at the time he filed his petition.

FINDINGS OF FACT

Petitioner, Todd Myron Moore, is a serial entrepreneur.[2] After studying architecture, business, and civil engineering in college, petitioner worked for three years as a civil engineer designing bridges. Petitioner eventually found this work unsatisfying, and in late 2008 he decided to change careers. He always enjoyed numbers and finance so he chose to enter the income tax return preparation

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year at issue, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]In addition to petitioner's tax return preparation business, he testified that he also engaged in real estate, insurance, mortgage services, and car sales businesses.

**[*3]** business even though he had no formal training in tax law or accounting principles before he made his decision. Petitioner, however, took online training courses and also attended a 12-week program provided by Jackson Hewitt before he embarked on his new career.

In October 2008 petitioner formed a single-member limited liability company, Moore Investment Group LLC, with offices in Georgia and Ohio. Moore Investment Group LLC is a disregarded entity for Federal income tax purposes and was the business entity that petitioner used to conduct his tax return preparation business.

Petitioner's Purported Loan Transactions

In late 2012 petitioner sought to expand his tax return preparation business, and to do so he needed additional capital. Petitioner approached five individuals with whom he had had prior business relationships and asked them for money to expand his tax return preparation business. Petitioner referred to these advances at varying times both as investments and as loans. Petitioner prepared nine purported promissory notes, which list a "loan period" and also a "return on investment" percentage. Each purported note specifies a return on investment of 100% or more. Only one of the purported promissory notes is signed. A summary of the information on the purported promissory notes is set out below:

[*4]

| Alleged lender | Date of document preparation | Amount advanced | "Return on investment" rate | Listed "payment schedule" | Signed |
|---|---|---|---|---|---|
| C. Akoma | 9/19/2012 | $10,000 | 100% | 2/8/2013 | No |
| J. Burton | 10/26/2012 | 5,000 | 100% | 2/22/2013 | No |
| J. Burton | 11/16/2012 | 10,000 | 100% | 3/1/2013 | No |
| W. McKinney | 9/10/2012 | 5,000 | 100% | 1/31/2013 | No |
| W. McKinney | 12/2/2013 | 8,000 | 200% | 4/1/2014 | No |
| A. Price | 10/1/2012 | 6,000 | 100% | 2/8/2013 | Yes |
| A. Price | 11/2/2013 | 25,000 | 200% | 3/3/2014 | No |
| J. Warren | 11/21/2012 | 3,000 | 100% | 3/1/2013 | No |
| J. Warren | 12/2/2013 | 10,000 | 200% | 4/1/2014 | No |

Petitioner's Commission Arrangements

In his tax return preparation business petitioner hired return preparers throughout the country as independent contractors. Petitioner's company served as a clearinghouse for processing returns and also provided training and support to his contractors. Each contractor developed and maintained his or her own client base and prepared returns for these clients.

Petitioner maintained several business bank accounts. When one of petitioner's return preparers would file a return for a client that generated a tax refund, the refund was deposited into one of petitioner's bank accounts, which

**[*5]** petitioner referred to as a third-party bank account and appears to have treated as an escrow account. Petitioner would then take from the client's refund the agreed-upon preparation fee, which would be deposited into another of petitioner's business accounts, and the remainder would be paid to the client. From the preparation fee petitioner would then pay a commission to the individual return preparer, ranging from 60% to 90% of the preparation fee depending on the return preparer's expertise and client base. Petitioner would retain the rest of the preparation fee.

From January to July 2013 petitioner engaged a payroll company to handle the commission payments. The payroll company paid the contractors either by direct deposit or by check. In July 2013 petitioner ended his relationship with the payroll company because he felt it had made errors in processing checks and was too expensive. After July 2013 petitioner began to handwrite checks to his return preparers for their commissions. To keep track of the payments petitioner had his assistant update a spreadsheet each week as new checks were processed by the payroll company (before July) or by petitioner (after July).

At the end of 2013 petitioner informed his former payroll company of all checks he had handwritten. The payroll company then prepared and submitted to the Internal Revenue Service (IRS) Forms 1099-MISC, Miscellaneous Income, for

[*6] the contractors listing all payments made to them throughout the year. These Forms 1099-MISC contained errors, however; for example, several of the Forms 1099-MISC did not include Social Security or taxpayer identification numbers for the recipients. Petitioner informed the payroll company of these errors. The payroll company then issued revised Forms 1099-MISC to the contractors and submitted them to the IRS.

On Schedule C, Profit or Loss From Business, of his original 2013 income tax return petitioner deducted commission expenses of $754,999. Petitioner also deducted investment expenses of $161,750, which included the $39,500 that he purportedly paid to the individuals who had advanced him funds. On August 26, 2015, respondent issued to petitioner a notice of deficiency, determining to disallow both deductions. On November 30, 2015, petitioner timely filed a petition with this Court to redetermine the deficiency. On October 12, 2016, petitioner submitted an amended 2013 income tax return, claiming deductions for commission expenses of $667,745 and investment expenses of $115,500.

<u>Trial</u>

We issued a standing pretrial order (SPTO) on May 31, 2018, in which we ordered the parties to exchange all documents they might seek to introduce into evidence at least 14 days before the first day of the trial session.

**[\*7]** On October 31, 2018, we held a trial in Atlanta, Georgia. At trial petitioner conceded that the amounts of commissions reported on his original and amended returns were too high and instead contended that the correct amount of commissions paid was $651,986. In support of this new number petitioner sought to introduce two exhibits: (1) a large set of canceled checks that he argues substantiates the commissions paid to his contractors and (2) a payroll register prepared by his former payroll company, which purports to list all payments issued to his contractors from January 1 to December 31, 2013. Respondent objected to these exhibits because petitioner did not produce the exhibits to respondent's counsel (or otherwise advise him of the exhibits) before trial, as required by the SPTO. Petitioner stated that he received the canceled checks from his former bank at the close of business the day before trial, and the payroll company summary four days before trial. We reserved ruling on respondent's objections as to these two exhibits.

OPINION

Petitioner bears the burden of proving that the determinations in the notice of deficiency are incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioner bears the burden of proving that he is entitled to deductions claimed on his return.

[*8] See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Before we can address the merits of petitioner's claimed deductions, however, we must resolve the pending evidentiary issues.

I.     Evidentiary Issues

This Court applies the Federal Rules of Evidence when deciding evidentiary issues. See sec. 7453. Under the Federal Rules of Evidence, relevant evidence is generally admissible, Fed. R. Evid. 402, but a Court has discretion to exclude relevant evidence if its "probative value is substantially outweighed by a danger of * * * unfair prejudice, * * * undue delay, [or] wasting time", Fed. R. Evid. 403.

The checks and payroll register petitioner seeks to introduce are relevant to whether, and in what amount, he may be entitled to a deduction for commissions paid. Moreover, they may corroborate whether, to whom, and why payments were made. Petitioner, however, did not comply with the SPTO because he did not exchange the exhibits with respondent's counsel by the deadline set forth in the SPTO. Petitioner argues that he could not have exchanged the exhibits by the deadline in the SPTO because he did not receive the documents from his bank and the payroll company until the week of trial. Petitioner states that he provided the exhibits to respondent expeditiously once he had them. Moreover, at trial petitioner provided copies to respondent's counsel, and respondent has had the

**[*9]** opportunity to review these documents during the pendency of this case. We find, therefore, that there is little risk of undue prejudice or delay by allowing these exhibits into evidence. Consequently, we overrule respondent's objection to their introduction and admit them.

## II.    Investment Expenses

On his original 2013 tax return petitioner deducted $161,750 as investment expenses. Petitioner later submitted an amended return, which deducted $115,500 as investment expenses. At trial petitioner conceded that both of these numbers are too high but argued that he is nonetheless entitled to deduct $39,500, the amount paid on the alleged loans to the purported creditors. Each of the nine purported promissory notes sets forth a "Return on Investment" rate of 100% or more, which petitioner contends is actually an interest rate. Petitioner argues that he is entitled to deduct the full amount of the payments he made related to these alleged loans. Respondent counters that petitioner is not entitled to any deduction because he has not established that (1) these arrangements were true loans, (2) the amounts deposited in his bank accounts actually came from the creditors, and (3) the payments are ordinary or necessary business expenses.

Section 163(a) provides that "[t]here shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." Interest is a

**[*10]** payment for the use or forbearance of money, and any payment for this purpose may be deductible regardless of its label.  See, e.g., John Hancock Life Ins. Co. (U.S.A.) v. Commissioner, 141 T.C. 1, 145-146 (2013).  For payments to be deductible as interest within the meaning of section 163(a), however, they must be made in connection with a bona fide loan transaction where both parties have an actual, good-faith intent to establish a debtor-creditor relationship at the time the funds are advanced.  Id.  This relationship exists if the debtor intends to repay the loan and the creditor intends to enforce repayment.  Fisher v. Commissioner, 54 T.C. 905, 909-910 (1970).  We look at various factors in determining whether this relationship in fact exists, including the presence of:  (1) a debt instrument, (2) a statement that interest will be charged, (3) a fixed schedule for repayment, (4) collateral to secure payment, (5) actual repayment, (6) reasonable prospects of advancement and repayment of the funds, and (7) the parties' conducting themselves as if the transaction were a loan.  See Calloway v. Commissioner, 135 T.C. 26, 37 (2010), aff'd, 691 F.3d 1315 (11th Cir. 2012); see also Fisher v. Commissioner, 54 T.C. at 909-910; Kaider v. Commissioner, T.C. Memo. 2011-174, slip op. at 15-16 (citing Welch v. Commissioner, 204 F.3d 1228, 1230-1231 (9th Cir. 2000), aff'g T.C. Memo. 1998-121).

**[*11]** We find that petitioner has not met his burden of proving that these transactions represented bona fide loans and that the payments he made with respect to them qualify as deductible interest. The purported notes, save one, are unsigned and bear no indication of a good-faith agreement between the parties. Petitioner has provided no testimony or other evidence from any of the alleged creditors to prove their intent to act as creditors and to enforce repayment, or how the alleged creditors characterized the transactions. The purported notes did not state interest rates or provide for any type of security interests. Petitioner also has not proven that the eight unsigned purported notes were contemporaneous debt instruments, as they have no execution dates. Finally, as to the one signed purported note, petitioner has failed to prove that the funds allegedly deposited in his account actually came from the alleged creditor; he has introduced no canceled check or other evidence tying the funds directly to the alleged creditor. On this record petitioner has failed to prove that these transactions represented bona fide indebtedness, and consequently, we conclude that petitioner is not entitled to a deduction under section 163(a).

III. Commission Payments

On his original 2013 Schedule C petitioner deducted commissions of $754,999. On Schedule C of his amended return he deducted commissions of

**[*12]** $667,745.  At trial he conceded that both of these commission deductions were too high and instead asserted that the correct amount was $651,986.  Respondent disputes petitioner's claim and argues that, because petitioner cannot show that the commission payments were made for a business purpose, he is entitled to no deduction.

Section 162(a) permits a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  If a taxpayer proves that he paid business commissions to independent contractors, he is entitled to a deduction.  See, e.g., Lewis v. Commissioner, T.C. Memo. 1983-741, 47 T.C.M. (CCH) 605 (1983); see also Fresoli v. Commissioner, T.C. Memo. 1988-384, 55 T.C.M. (CCH) 1624 (1988).  To prove that he paid deductible commissions, the taxpayer generally must introduce documentary evidence, such as canceled checks, a check register, or payroll records in addition to credible testimony.  See Niv v. Commissioner, T.C. Memo. 2013-82, at *21-*23; Fresoli v. Commissioner, 55 T.C.M. (CCH) at 1626-1627; Lewis v. Commissioner, 47 T.C.M. (CCH) at 608.

If a taxpayer establishes that he is entitled to some deduction but cannot establish the full amount claimed, the Court may estimate the amount of the allowable expense deduction to the best of its ability, "retaining always the power

[*13] to 'bear * * * heavily * * * upon the taxpayer whose inexactitude is of his own making'". Ellis Banking Corp. v. Commissioner, 688 F.2d 1376, 1383 (11th Cir. 1982) (quoting Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930)), aff'g in part, remanding in part T.C. Memo. 1981-123.  For the Court to estimate the amount of an expense, however, there must be a reasonable basis in the record to support that estimate.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Petitioner has demonstrated that he is entitled to a deduction for commissions paid to his contractors in 2013.  At trial he testified credibly that he ran a tax return preparation business.  He also testified credibly that he retained independent contractors as return preparers throughout the country to whom he paid commissions based on their experience level and clientele.  Moreover, he has introduced numerous canceled checks that he or his payroll company wrote to various individual contractors.  Petitioner has also introduced payroll reports generated by his former payroll company that identify contractors petitioner paid and list the amounts he allegedly paid each during 2013.  Both the checks and the payroll summary identify many of the same contractors, with the handwritten checks listing "commissions" or similar text in the memorandum line.  Additionally, respondent's list of Forms 1099-MISC filed by petitioner corroborates the identities of numerous contractors and provides payment amounts

**[\*14]** that broadly align with the sums in the exhibits petitioner provided. We therefore find that petitioner paid the named independent contractors in furtherance of his business and is entitled to a deduction for commission payments.

We also find that petitioner has provided a reasonable basis from which we can make an estimate of his actual commission expenses. As noted above, the amounts of the canceled checks and the amounts reflected in the payroll company reports petitioner provided broadly align with the amounts shown on the Forms 1099-MISC list respondent provided. Taken together, these exhibits provide upper and lower limits for a range of potential payment amounts, bracketing our estimate and ensuring that it does not amount to "unguided largesse". Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

In estimating the commission expenses deduction we are mindful of the gaps in the record and the quality of the evidence introduced, and we will not reward petitioner for "inexactitude[s] \* \* \* of his own making." Cohan v. Commissioner, 39 F.2d at 544. To start, we note that petitioner's business records for tax year 2013 are so woefully disorganized and incomplete that petitioner has not been able to provide a credible and reliable statement of his total commission expenses. Instead, he has asserted three different numbers at varying stages of this

[*15] case.  The exhibits in the record provide no less than nine potential sums,

ranging from just over $400,000 to $750,000.  We are convinced that petitioner

paid commissions to independent contractors, but we also are concerned about the

fluid state of the evidence he introduced.  Consequently, we will sustain

deductions only for amounts clearly established by the record, and we will resolve

ambiguities against petitioner.

With that in mind, we find that petitioner's check registry, Exhibit 11-P, and

gross pay report, Exhibit 16-R, and the list respondent provided of Forms 1099-

MISC filed by petitioner, Exhibit 17-R, to be the most credible evidence in the

record.[3]  While the record provides a wide range of potential sums, we can limit

this range by relying on these exhibits.  Cf. Neonatology Assocs., P.A. v.

Commissioner, 115 T.C. 43, 84-87 (2000), aff'd, 229 F.3d 221 (3d Cir. 2002).

On the basis of the records described above and summarized in the

appendix, we find that petitioner is entitled to a deduction of $414,157.  As shown

in the appendix, we limit our dataset to include only those individuals identified in

all three exhibits, excluding petitioner.  We then look at the totals generated by the

exhibits:  $536,398, $414,157, and $536,414.  Our analysis begins by recognizing

---

[3]Ordinarily we would not reference specific exhibits in an opinion, but in this case doing so helps illuminate our reasoning.

**[\*16]** that the totals generated by Exhibits 17-R and 11-P are quite close, but we cannot discard the total provided by Exhibit 16-R.  To account for the variance, where Exhibit 16-R provides a lesser payment amount for a given contractor, we will consider only that lesser amount.  Cf. Green v. Commissioner, 66 T.C. 538, 544-549 (1976).  Doing so, we conclude that $414,157 is the appropriate amount of the allowable commission expenses deduction because it reflects the substantial amount of commission payments we believe petitioner made, but does not reward petitioner for "inexactitude[s] * * * of his own making."  Cohan v. Commissioner, 39 F.2d at 544.

IV.    Accuracy-Related Penalty Under Section 6662(a)

Respondent determined that petitioner is liable for the accuracy-related penalty under section 6662(a) for 2013.  Section 6662(a) authorizes the Commissioner to impose a 20% penalty on an underpayment of tax attributable to, among other things, any substantial understatement of income tax within the meaning of section 6662(b)(2).  A substantial understatement means an understatement that exceeds the greater of $5,000 or 10% of the income tax required to be shown on the return for the taxable year.  Sec. 6662(d)(1)(A).  A taxpayer may be excused from this penalty if the taxpayer can show that there was reasonable cause for and that the taxpayer acted in good faith with regard to the

[*17] underpayment. Sec. 6664(c)(1). Whether a taxpayer acted in good faith and with reasonable cause is determined on the basis of the totality of the facts and circumstances, including "the experience, knowledge, and education of the taxpayer." Sec. 1.6664-4(b)(1), Income Tax Regs.

The Commissioner bears the burden of production as to accuracy-related penalties, which he may satisfy by providing sufficient evidence to indicate that it is appropriate to impose the relevant penalty. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). As part of his burden of production, the Commissioner must also prove that he complied with the supervisory approval requirement of section 6751(b)(1). Graev v. Commissioner, 149 T.C. 485 (2017), supplementing and overruling in part 147 T.C. 460 (2016).

Respondent determined that petitioner understated his income tax by $453,564, which is greater than 10% of the income tax that should have been reported. Respondent also introduced a signed Civil Penalty Approval Form approving the assertion of the substantial understatement penalty against petitioner before the first formal assertion of the penalty. We have determined that petitioner is entitled to deduct $414,157 as commission expenses. To the extent that the Rule 155 computations taking our determination into account show that petitioner

**[*18]** substantially understated his 2013 income tax liability within the meaning of section 6662(d)(1)(A), we find that respondent has met his burden of production.

Assuming that the Rule 155 calculations show that petitioner substantially understated his income tax on his return, petitioner is therefore liable for the accuracy-related penalty unless he can show reasonable cause and good faith with respect to his underpayment.  See sec. 6664(c)(1).  Although petitioner is not an accountant or an attorney, he organized and ran a multistate tax return preparation business.  He held himself out as a tax professional, advising others on preparing returns and otherwise applying the requirements of the Code to individual taxpayers, but he failed to keep accurate documentation about his largest reported expenses:  the commissions he paid to his independent contractors and the purported interest payments he made to alleged creditors.  Given petitioner's background and business in tax return preparation, this is unreasonable.  We find, therefore, that he did not have reasonable cause for his underpayment and that he is liable for the accuracy-related penalty under section 6662 to the extent that the Rule 155 calculations show that he substantially understated his 2013 income tax.

**[\*19]** To reflect the foregoing,

Decision will be entered under

Rule 155.

[*20]                              APPENDIX

**Summary of the most credible exhibits regarding commission payments**

| Payee name | Exhibit 17-R Forms 1099-MISC | Exhibit 16-R gross pay report | Exhibit 11-P check register |
|---|---|---|---|
| J. Abdul | $4,341 | $4,341 | $4,341 |
| A. Battle | 5,315 | 3,490 | 5,315 |
| A. Bryant | 5,986 | 5,986 | 5,986 |
| J. Cohen | 45,598 | 36,580 | 45,599 |
| M. Dothard | 47,951 | 11,212 | 47,952 |
| T. Dulaney | 4,384 | 3,984 | 4,384 |
| K. Felton | 4,471 | 4,171 | 4,471 |
| T. Francis | 850 | 850 | 850 |
| S. Harrell | 35,639 | 30,724 | 35,640 |
| S. Harrod | 1,412 | 1225 | 1,413 |
| K. Hubbard | 10,149 | 1,252 | 10,150 |
| K. Husain | 9,668 | 9,669 | 9,669 |
| R. Jackson | 1,475 | 1,475 | 1,475 |
| I. Jihad | 4,051 | 4,052 | 4,051 |
| N. Jihad | 106,712 | 102,979 | 106,712 |
| B. Jones | 51,778 | 51,779 | 51,779 |
| E. Jones | 1,500 | 1,500 | 1,500 |
| E. Jones | 6,521 | 4,742 | 6,521 |
| M. Jones | 2,553 | 2,553 | 2,553 |
| M. Long | 2,318 | 1,741 | 2,319 |

[*21]

| | | | |
|---|---|---|---|
| K. McMillian | 735 | 735 | 735 |
| K. Morns | 2,050 | 1,930 | 2,050 |
| C. Morton | 4,719 | 3,166 | 4,719 |
| E. Mulenoh | 1,635 | 1,635 | 1,635 |
| J. Ndong | 1,020 | 1,020 | 1,020 |
| R. Perryman | 50,153 | 20,913 | 50,154 |
| A. Powe | 2,165 | 1,485 | 2,165 |
| T. Robertson | 11,654 | 11,654 | 11,654 |
| A. Robinson | 2,160 | 2,130 | 2,160 |
| R. Rogers | 16,170 | 9,459 | 16,170 |
| L. Shelley | 9,460 | 9,461 | 9,461 |
| J. Smith | 39,212 | 26,736 | 39,213 |
| J. Spears | 791 | 792 | 792 |
| B. Stewart | 1,387 | 1,388 | 1,388 |
| D. Stewart | 770 | 770 | 770 |
| N. Trice | 3,533 | 2,573 | 3,533 |
| P. Tucker | 700 | 700 | 700 |
| T. White | 3,391 | 3,392 | 3,392 |
| A. Williams | 1,410 | 1,410 | 1,410 |
| R. Young | 25,926 | 23,817 | 25,927 |
| S. Young | 4,685 | 4,686 | 4,686 |
| Total | 536,398 | 414,157 | 536,414 |